ARTHUR GAITA, Doing Business under the Firm Name of PALM GARAGE, Respondent, *v.* WINDSOR BANK, Appellant.

(Argued May 1, 1929; decided May 28, 1929.)

*Walter M. Hinkle* and *Irving I. Goldsmith* for appellant. A bank may require and have the protection of a qualified stop payment order. (*Usher* v. *Tucker Co.*, 217 Mass. 441; *American Defense Society* v. *Sherman National Bank*, 225 N. Y. 506; *Hiroshima* v. *Bank of Italy*, 248 Pac. Rep. 946; *Cohen* v. *State Bank of Philadelphia*, 69 Penn. Super. Ct. Rep. 40; *Hahn* v. *Home Savings Bank of Los Angeles*, 32 Banking Law Jour. 783; *Elder* v. *Franklin Nat. Bank*, 25 Misc. Rep. 716; *Levine* v. *Bank of the United States*, 229 N. Y. Supp. 108; *Malatesta* v. *Saratoga National Bank*, 219 App. Div. 752.)

*Henry E. Stohldreier* and *Gordon Miller* for respondent. It is well settled by courts of this State that a duty is imposed upon a bank to honor a depositor's stop payment order, and the bank cannot exact as a condition for the performance of such duty a release from such liability because of its inadvertent failure to comply therewith. (*American Defense Society* v. *Sherman Nat. Bank*, 225 N. Y. 506; *Elder* v. *Franklin Nat. Bank of the City of New York*, 25 Misc. Rep. 716; *Levine* v. *Bank of the United States*, 229 N. Y. Supp. 108; *Malatesta* v. *Saratoga National Bank*, 219 App. Div. 752.)

HUBBS, J. The plaintiff was a depositor in the defendant bank. He drew and delivered to the payee a check

on his account. The next morning, before the check had been presented for payment, he executed and delivered to the teller of the defendant bank a "stop payment notice," which reads: "Please stop payment on Check No. 220 for $500.00 dated July 1st, drawn by me to the order of Philip Bernstein atty. for E. Schneider & Son Garage Corp. and I hereby agree to indemnify The Windsor Bank against any loss resulting from non-payment of said check. Should you pay this check through inadvertency, or oversight, it is expressly understood that you will in no way be held responsible." Five days later the check was paid by the defendant bank and the amount charged against the plaintiff's account.

This action is to recover from the defendant bank the amount paid by it and charged against the plaintiff. Thus far the plaintiff has succeeded upon the ground that the check was negligently paid by the bank and that such negligent payment made the bank absolutely liable to its depositor, without regard to the terms of the "stop payment notice." The courts below have refused to give any effect to the words: "Should you [bank] pay this check through inadvertency, or oversight, it is expressly understood that you will in no way be held responsible."

Undoubtedly the drawer of a check which has not been certified has a legal right to stop the payment thereof by giving a seasonable stop payment notice to the bank upon which it is drawn, and if the bank thereafter pays such check it is liable to the drawer therefor. That is the bank's common-law liability. Such liability grows out of the relationship of the parties, which is that of debtor and creditor. After the receipt of an unequivocal notice to stop payment, a bank pays at its peril. (*American Defense Society* v. *Sherman Nat. Bank*, 225 N. Y. 506; *Florence Mining Co.* v. *Brown*, 124 U. S. 385; *Usher* v. *Tucker Co.*, 217 Mass. 441.)

The common-law liability of a bank in regard to a specific transaction may be limited provided the limita-

tion has the assent of the depositor. In such a situation the clearly-expressed intention of the parties will prevail and the rule of " freedom of contract " will be enforced. (*Isler* v. *National Park Bank*, 239 N. Y. 462; *Tremont Trust Co.* v. *Burack*, 235 Mass. 398; 27 Columbia Law Review, 294.)

The notice served on the bank by the plaintiff is clear and unambiguous. There can be no mistake in regard to its meaning. The plaintiff, in effect, notified the bank that he had given a check which was valid but that he had changed his mind and did not want the check paid. He said, however, in effect, " If you [the bank] do pay it through inadvertence, I will not hold you responsible." He had a legal right to serve such a notice qualifying the bank's common-law liability, and when the bank paid the check, after receipt of such notice, it did not become legally liable to the drawer in the absence of evidence of willful disregard of the notice.

If a drawer desires to hold a bank to its common-law liability and impose upon it the absolute duty of stopping payment of a check, the notice served on the bank should be positive and unqualified. Then if the bank does not desire to assume the liability imposed by such a notice, it may cancel the account and terminate its relationship with the depositor.

On the other hand, if the drawer serves a qualified or limited notice like the one in question, the obligation of the bank is thereby limited, and it will not be liable to the drawer if the check is inadvertently paid.

The judgments should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgments reversed, etc.