People's Gin Co. *v.* Canal Bank & Trust Co. *et al.*

(Division B.   Dec. 5, 1932.)

[144 So. 858.   No. 30260.]

(Division B. Feb. 27, 1933. Motion to Retax Costs Overruled April 10, 1933.)

[146 So. 308. No. 30260.]

For former opinion, see 144 So. 858.

**Moody & Johnson,** of Indianola, for appellant.

**Cooper & Thomas,** of Indianola, for appellees.

634

Percy, Strauss & Kellner, of Greenville, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

On December 8, 1931, the appellant (People's Gin Company) sent to the Bank of Moorhead, a branch of the Grenada Bank, a check drawn by the Sunflower Cotton Oil Company, payable to the appellant, on which was indorsed: "For deposit only in Bank of Moorhead." This check was received by the Bank of Moorhead, credited subject to payment, and forwarded for collection to the Canal Bank & Trust Company of New Orleans, La., one of the appellees, which received it on December 9, 1931.

Prior to December 8, 1931, the appellant, by its secretary, signed and delivered to the Bank of Moorhead a signature card reading, on its face: "The Grenada Bank or branch bank, Bank of Moorhead, is hereby authorized to recognize the signature executed below in payment of funds on deposit, or the transactions of other business with the undersigned. All conditions printed on the reverse side of this card have been read and are hereby

agreed to. Authorized signatures ———— And or when signed ———— Date ————, Address ————.'' And on the back as follows: ''It is understood and agreed that this bank acts only as a depositor's collecting agent when receiving items for deposit or collection, and does not assume responsibility beyond the exercise of due care, and that items so deposited and credited, are accepted subject to final payment in cash or its equivalent, and the bank will not be liable for default or negligence of its duly selected correspondents, nor for loss in transit. And each correspondent so selected shall not be liable except for its own negligence. The right is reserved to send items direct or indirect to any bank, including the payor, and to accept drafts of such banks (but only subject to payment) as conditional payment in lieu of cash, the bank reserving the right to charge back any item at any time before final payment, whether returned or not, also any item drawn on this bank not good at the close of business on day deposited. It is agreed no order for stop payment of any check drawn on this bank by depositor shall be valid unless the notice be in writing. It is agreed that if average balance of depositor shall be less than fifty dollars for the time of thirty days, and if three or more checks be drawn against the account within the time, a service fee of one dollar per month may be charged against the account without notice, or if the average daily balance shall be in excess of fifty dollars, but less than one hundred dollars, for the time of thirty days, and there shall be five or more checks drawn against the account within the time, a service fee of fifty cents per month may be charged against the account of the depositor without notice. It is agreed that this bank will not be liable for dishonoring any overdraft by reason of such charges.''

The check above mentioned, with other items, aggregating five thousand eight hundred twenty-eight dollars and twenty-one cents, was, by the Canal Bank & Trust

Company, forwarded, on December 9, 1931, to the Bank of Indianola, the drawee, and in payment of the aggregate of items thus sent to it, the Bank of Indianola remitted its exchange on the Bank of Commerce & Trust Company, of Memphis, Tenn., for five thousand, eight hundred twenty-eight dollars and twenty-one cents, dated December 12, 1931. This exchange was received by the Canal Bank & Trust Company, forwarded by it for collection to Memphis, Tenn., but when it arrived in Memphis the Bank of Indianola had been closed for liquidation by the state banking department and the exchange was not paid. On December 15, 1931, the Canal Bank & Trust Company was advised that the exchange of the Bank of Indianola on the Bank of Commerce & Trust Company had been dishonored, and it promptly wired the Bank of Moorhead to that effect; and on the 16th it also wired that the Bank of Indianola was reported closed and the exchange dishonored. Thereupon, the Canal Bank & Trust Company charged the amount of the one thousand dollar check back to the Bank of Moorhead, which, in turn, charged the same to the appellant. Both banks refused to pay the appellant the amount of the check, and thereupon this suit was instituted to recover from each or both.

When the one thousand dollars was sent by the Canal Bank & Trust Company to the Bank of Indianola, the drawer of the check had funds in that bank sufficient to pay the check, and the check was paid, marked paid and canceled, and turned over to the drawer, the Sunflower Cotton Oil Company.

At no time was this check ever recovered from the Sunflower Cotton Oil Company, nor returned to the appellant by either the Canal Bank & Trust Company or the Bank of Moorhead.

The Canal Bank & Trust Company had an agreement with the Grenada Bank which, among other things, contained the following: ''The undersigned hereby agrees

to the terms and conditions printed on the reverse hereof,'' and contains the authorized signature. And on the reverse or back side appears the following: ''This bank will handle checks, drafts and other items, subject to the following terms and conditions, and each correspondent and clearing bank which sends checks for deposit or collection to this bank, or any other bank for our account, will be understood to have agreed to such terms and conditions, and by such action shall be deemed (a) to authorize this Bank to handle such items subject to the following terms and conditions; (b) To warrant its own authority to give this Bank authority, and (c) To agree to indemnify this Bank for any loss resulting from its failure to have such authority; . . . 3. Checks, drafts and other items drawn on other cities. will be handled subject to the following terms and conditions, (a) This bank will act only as the agent of the customer from which it receives such items, and will assume no responsibility, or liability, except for its own negligence, or guaranty of previous endorsement: (b) This bank may present such items for payment or send such items for collection, direct to the bank on which they are drawn, or at which they are payable. or in discretion may forward them to a collecting agent with authority to present them for payment. or send them for collection direct to the Blank on which they are drawn, or at which they are payable. . . . (d) This bank and/or collecting agents may, in their discretion. and at their option, accept either cash or bank drafts in payment of, or in remittance for, such items, and they shall not be held liable for any loss resulting from the acceptance of bank drafts in lieu of cash, or for failure of the drawee bank, or any collecting agent to remit for such item. or for the non-payment of any Bank draft accepted in payment, or as a remittance from the drawee bank. or any collecting agent. (e) The amount of any check for which payment in actual and finally collected funds is not received, may be

charged back to the customer, regardless of whether or not the check itself can be returned."

Mississippi is controlled by what is known as the Massachusetts rule in regard to sending out checks through banks for collection, and that is that each bank that receives the item acts as an agent for the depositor. Some, and perhaps a majority, of the states, have what is known as the New York rule, which is that only the bank first receiving the item is responsible to, or is the agent of, the depositor; the other banks being the agent of the bank, in the process of the collection. Under the Massachusetts rule in force in Mississippi, as stated, the Canal Bank & Trust Company was the agent of the appellant in making the collection, and it had no right to bind the appellant by its agreement with the Bank of Moorhead, because the check showed on its face, by its indorsement, that it was not a transfer of funds from one to another, but was a deposit, with the Bank of Moorhead, marked, "For Deposit only," and was not for assignment or transfer except for the purpose of collection.

If we concede that the Canal Bank & Trust Company had the same rights in reference to the collection that the Bank of Moorhead had, it still would not be absolved from liability, because, under that agreement, the authority to send the check direct and receive checks in payment was only authority to receive a check as a conditional payment, and it would have no right to surrender the check sent for collection for cancellation as a completed payment. If the check sent by the collecting bank to the Canal Bank & Trust Company was not paid, it would have to reclaim the check sent and return it to the sender or the depositor.

In addition to this, the item taken from the Bank of Indianola in payment was not merely a check in payment of the one thousand dollars involved in this suit, but was a check received in payment of other items

aggregating five thousand eight hundred twenty-eight dollars and twenty-one cents, which the Bank of Indianola gave to said bank as a settlement of a number of items.

It is fundamental, of course, that instruments like agreements contained on the signature cards are to be construed most strongly against banks in favor of depositors, and the terms will not be enlarged in order to protect the bank undertaking to collect a check. It will be held strictly to the terms of the contract in that regard.

In addition to the facts stated above, the Canal Bank & Trust Company filed the check of the Bank of Indianola on the Bank of Commerce & Trust Company with the state banking department as a claim against the assets of the Bank of Indianola.

It is true that the testimony on behalf of the bank showed that this was done for the purpose of protecting all the parties involved; but nevertheless the legal title to that check was in the Canal Bank & Trust Company, and it was never returned or assigned to the depositor.

By reason of the transaction, all right of the appellant to collect from the drawer of the check (the Sunflower Cotton Oil Company) is lost. The obligation of that check, so far as the Sunflower Cotton Oil Company is concerned, was discharged by the application of its funds in the Bank of Indianola to the payment of its check and the surrender of the check and its being marked canceled and paid before the bank closed for liquidation by the state banking department.

The Canal Bank & Trust Company filed a cross-bill against the Grenada Bank and the Bank of Moorhead, one of its branches, seeking to indemnify itself in case it was required to pay to the appellant the amount of this check. The court below dismissed both the bill and the cross-bill, it being of the opinion that the appellant had no right of action at all, and consequently, on this item, the Bank of Moorhead was under no duty to protect the

Canal Bank & Trust Company under the signature card above referred to.

We are of the opinion that the chancellor was in error in holding that the appellant was not entitled to recover from the Canal Bank & Trust Company. It should have been awarded a judgment for the amount of that check against the Canal Bank & Trust Company for the reasons above stated.

The chancellor did not decide what the rights were between the Bank of Moorhead and the Canal Bank & Trust Company, and, consequently, we cannot decide that question here.

The judgment of the court below will be reversed, and the cause remanded, with directions to render judgment in favor of the appellant against the Canal Bank & Trust Company for the amount of the check, and to pass upon the questions involved in the case of the Canal Bank & Trust Company against the Bank of Moorhead.

Reversed and remanded.

### On Suggestion of Error.

**Griffith, J.**, delivered the opinion of the court on suggestion of error.

In our former opinion the following stipulation required by the banks of their depositors was considered: "The right is reserved to send items direct or indirect to any bank, including the payor, and to accept drafts of such banks (but only subject to payment) as conditional payment in lieu of cash, the bank reserving the right to charge back any item at any time before final payment, whether returned or not." Interpreting this clause, we held as follows: "If we concede that the Canal Bank & Trust Company had the same rights in reference to the collection that the Bank of Moorhead had, it still would not be absolved from liability, because under

that agreement the authority to send the check direct and receive checks in payment was only authority to receive a check as a conditional payment, and it would have no right to surrender the check sent for collection for cancellation as a completed payment.'' 144 So. 858, 860. In other words, we held that the acceptance of the check of the payor bank would be conditional upon actual subsequent payment, and that unless the check of the payor bank was actually paid the collecting bank would be liable to the owner of the surrendered item attempted to be collected.

Upon further reflection and upon a mature consideration of the suggestions of error, we have become in doubt but that in requiring the depositor's agreement it was exactly the purpose of the banks to enable the collecting bank to surrender the depositor's item and to take the check of the payor bank, and that unless this check was paid the collecting bank would not be liable, but could charge back the item to the original depositor, although the collecting bank had thereby placed the item beyond its power to return to the depositor and although the action of the collecting bank had caused the depositor to lose his claim against the original maker of the item, and would place the depositor where his only recourse would be against the defaulting and defunct payor bank.

We were led to the conclusion stated in our original opinion because we regarded the agreement inequitable and unjust in its studied requirements against the depositor, for which reason, and for the further reason that these agreements are prepared by the banks and each of the public is required to accede to them or else be deprived of the ordinary course of banking facilities, we determined to construe them as strongly as the language would permit against those who prepared these agreements and required signatures to them. When the suggestions of error came in, and upon a further con-

sideration as aforesaid, and we were in doubt upon the conclusion whether the studied and carefully prepared language of the agreement would bear the interpretation which we had placed thereon, we called for a response to the suggestions of error and advanced the point for inquiry and citation of authorities whether the agreements construed and carried to the extent insisted upon by the banks would not be in contravention of public policy. The stated point is not beyond inquiry, under the general principles and the numerous cases on the general subject which may be found in 50 C. J., pp. 857-859.

The response to the suggestions of error did not point us to any specific case or cases in respect to the issue of public policy and we lay that question aside without any decision upon it. And we eliminate from our former opinion that part which we have above quoted, reserving commitment until a case shall arise, which will require decision on that particular point in order to determine the ultimate result. We nevertheless overrule the suggestion of error and in doing so place our decision on the ground, which was mentioned in our former opinion, in the following words: "In addition to this, the item taken from the Bank of Indianola . . . was not merely a check in payment of the one thousand dollars involved in this suit, but was a check received in payment of other items aggregating five thousand eight hundred twenty-eight dollars and twenty-one cents, which the Bank of Indianola gave to said bank as a settlement of a number of items." There is not found in the agreement exacted of depositors any such terms, either expressly or by necessary implication, that the item or items of one depository may be bunched with those of others. What was done here after all the circuity of transfers from bank to bank and over long distances was that appellant's check for one thousand dollars was bunched with several other items and one check from

the Indianola Bank was taken to cover the aggregate. Appellee Canal Bank thereby not only surrendered appellant's check and allowed it to become a paid obligation so far as the maker of that check is concerned, but has deprived appellant of the status of an independent claimant, fully vested with the power and privilege to handle its own separate claim against the defunct bank, and has hooked up appellant with other claimants whose interest may not be identical, and some of whom it may turn out are in fact to stand upon dissimilar grounds or even upon rights which may be antagonistic, for all that we know or the bank may know. Quite certain it is that there is no express provision in the agreements upon which the banks rely that this bunching of items may be permitted by the collecting bank, and hence the agreements relied on by the banks to relieve them of liability do not reach the case here made. We repeat what was said in the former opinion that these agreements will be strictly construed, the terms thereof will not be extended a single step by interpretation; and thus we now say that, when they are interposed as a defense, the case must be clearly within the very words of these agreements, so strongly drawn in favor of the banks, and, if the facts fall without the terms used, in any substantial particular, these agreements do not avail.

Suggestion of error overruled.