DIONICIO HERNANDEZ, APPELLEE, V. FIRST NATIONAL BANK OF OMAHA, APPELLANT.

FILED JULY 12, 1933. No. 28513.

*Finlayson, Burke & McKie,* for appellant.

*Shotwell, Monsky, Grodinsky & Vance, Henry J. Beal* and *Harry B. Cohen, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ.

EBERLY, J.

This is an action at law by Dionicio Hernandez against the First National Bank of Omaha for the recovery of certain moneys deposited by him in the "savings department" of the defendant bank. Without setting forth the pleadings of the parties, it may be said that the making of the deposits by the plaintiff is admitted as alleged, and as its defense, in substance, defendant tenders a plea of payment made in good faith, without negligence, and in strict accord with the special terms of the written contract of deposit. Upon this issue there was a trial to a jury resulting in a verdict and judgment for the plaintiff. From the order of the trial court overruling its motion for a new trial, the defendant appeals.

The evidence discloses that the plaintiff, Dionicio Hernandez, is a Mexican. His knowledge of English is limited and he testified with the aid of an interpreter. In December, 1926, he was desirous of opening a "savings account." He appealed for assistance to a Mrs. C. F. Secord, then a social welfare worker among his countrymen of Omaha, and who could speak Spanish. She suggested opening an account with the defendant bank. Hernandez turned over to her two checks of $500 each for this

purpose. Mrs. Secord then obtained from the bank the usual signature card, which Hernandez executed by signing thereon, in his own handwriting, "Dionicio Hernandez," under and following the words: "I hereby agree to the by-laws, rules and regulations governing the savings department of First National Bank of Omaha, Omaha, Nebraska." At this time Hernandez also gave Mrs. Secord an additional $70 which, together with the two checks theretofore received, was on December 23, 1926, deposited with the defendant bank. The savings account was then opened in plaintiff's name, as he had requested, the bank having been informed that he was the real depositor, and was making use of the services of Mrs. Secord to transact the business of opening this account in his behalf. The usual savings book (referred to ordinarily as the pass-book) was accordingly made up by the defendant, showing a deposit of $1,070, and delivered to Mrs. Secord, who in turn transmitted it to plaintiff. In this pass-book are printed, "Rules Governing Savings Deposits," one of which is: "The pass-book shall be the voucher of the depositor, and the possession of the pass-book shall be sufficient authority to the bank to warrant any deposit or payment made and entered therein."

Thereafter plaintiff made additional deposits in said account until the same aggregated $4,460.28. In each instance the sum of money intended for deposit was by plaintiff given to Mrs. Secord, and she transmitted it to the bank, together with the pass-book, in which proper entries were made by defendant's officers. It also appears that, later during the transaction of this business, Mrs. Secord obtained this "pass-book" from Hernandez upon the pretense that the safe-keeping of the same would be thereby promoted, and thereafter she kept continuous possession of the same. She then, in violation of the confidence bestowed, made use of this "pass-book," in connection with forged receipts, to withdraw sums of money at different times from this savings account, unlawfully and without authority. These sums of money so with-

drawn by her ultimately totaled $3,382.31. The evidence discloses that she then absconded.

Officers of the defendant bank, as witnesses, detailed at length the manner and method of the business transacted by this "savings department." They testify that the rule as to possession of pass-book authorizing payment was in force during ' the entire period of the transactions involved in the instant case; that in making withdrawals from the deposits, in addition to the presentation of the pass-book, it was necessary to present a "savings department receipt," made upon blanks furnished by the bank, and executed by the depositor setting forth the amount of money paid. This "savings department receipt" on its face also contained the words, "pass-book must accompany this receipt." These bank officers further testified that in each of the payments by the bank which is here the subject of litigation the pass-book was presented with a receipt, and payment was made thereon by the proper officer of the defendant; that the signature card is employed, not only for the purpose of expressing in writing the formal agreement of the depositor to the "by-laws, rules and regulations," but also for identifying the account and the signature of the customer; that this signature card is kept on file in the paying teller's cage to enable the teller to determine whether or not any instruments presented to him purporting to be signed by the owners of savings accounts, including the savings bank receipts, bear the genuine signatures of such owners; that these cards are kept directly behind the paying tellers of this department, where they are quickly available for use at all times, and that it is the duty of these officers to compare signatures on withdrawal receipts with the signatures on the signature cards. After examining each of the forged receipts on which, in connection with the pass-book, the withdrawals in suit were made, their testimony is that "under study" there appears to be a "marked" or "probable" dissimilarity between the signature on the signature card and the signature on each

of the forged receipts. No witnesses testify that the questioned signatures are genuine.

The evidence of the paying teller who made most, if not all, of the payments in litigation, in substance, is that she at all times knew that plaintiff was a man, and the actual depositor, though she had never seen him; that she recognized Mrs. Secord as his agent, bringing in the pass-book and making deposits, and also bringing in the book, and, in connection with the "savings department receipts" purporting to have been executed by Hernandez in person, making the withdrawals in suit; that, while the first three or four receipts presented in Hernandez's behalf, which included all the savings bank receipts on which his genuine signatures appear, were probably compared by her with the signature card, thereafter, "knowing Mrs. Secord well enough," such comparison probably was not made.

Plaintiff's expert witness testimony, practically uncontradicted, must be deemed sufficient to establish that all the questioned savings department receipts were forgeries. These original instruments were introduced in evidence and submitted to the trial jury, together with the admittedly genuine signature of plaintiff.

Among other provisions contained in the "Rules Governing Savings Deposits" printed in plaintiff's pass-book are those providing for the regular crediting of interest on deposits made at certain times and at definite rates, and for withdrawal of deposits with interest accrued thereon, in whole or in part, subject to certain notice, at the option of the depositor, at any time desired.

On the discovery of the fact of the unauthorized withdrawals from his account, plaintiff instituted this action.

The bank contends that a by-law of a savings bank that it will stand exonerated for any payment which it makes upon presentation of, and entry in, a depositor's pass-book, in all events where the person presenting the pass-book is rightfully in possession of it, is a valid regulation; further, that such is the legal effect of the rule

printed in plaintiff's pass-book, and its terms, in view of the facts of this case, afford the bank a complete defense in this action.

It is obvious, however, that, while we are here concerned with a "savings account," the "savings department" of the defendant bank may not be considered a "savings bank." In a savings bank, "the depositors are the bank, the trustees and officers are their agents for receiving and loaning their money; and the profits belong to the depositors, even though a statute limits the rate of dividends payable by the bank and provides for the accumulation of a surplus as a contingent fund." 2 Morse, Banks and Banking (6th ed.) 1288. See, also, 7 C. J. 851. Neither is the name "savings department" of any force in determining the legal relations of the parties to this litigation.

"Although a bank may be called a savings bank, if it is really a stockholders' bank, where the capital is owned by the shareholders, the name will amount to nothing (unless it produces actual harm to a depositor by misleading him without his fault) ; and in such a bank a deposit creates the relation of debtor and creditor, and the depositor has no lien or trust in the bonds in which the money he deposits is invested, as is the case in a savings bank, even though the bank officers promise to hold the bonds for his benefit; such a lien can only be created by mortgage or pledge. A by-law authorizing a savings deposit to be withdrawn after giving due notice, without regard to the condition of the investment at the time, indicates that the depositor has no trust in the investment; otherwise he would have to await the maturity of the note on which his money is loaned." 2 Morse, Banks and Banking (6th ed.) 1291.

"A deposit of funds in the savings department of a national bank, upon an agreement for repayment with interest at a stipulated rate, creates the relation of debtor and creditor between the depositor and the bank; and not that of trustee and *cestui que trust.*" *State v.*

*National Banks,* 75 N. H. 27. See, also, 7 C. J. 851. The defendant is therefore not to be deemed a "savings bank," and while having savings accounts, it is not carrying on a "savings bank" business in the true sense of that term. *State v. National Banks,* 75 N. H. 27.

It may be conceded that the defendant, as a national bank, is by statute vested with the power "to make contracts, * * * to prescribe, by its board of directors, by-laws * * * regulating the manner in which its stock shall be transferred * * * its property transferred, its general business conducted, and the privileges granted to it by law exercised and enjoyed. * * * To exercise * * * all such incidental powers as shall be necessary to carry on the business of banking; * * * by receiving deposits," etc. 1 Mason's U. S. Code, Ann. p. 597. While the statute quoted, for the purpose of this case, may be deemed to confer ample power on the defendant to adopt the rule on which it relies, and to enter into the contract here in suit, still other provisions specify that this bank shall hold and maintain with the federal reserve bank an actual net balance equal to, and not less than, a "named" per centum of the aggregate amount of deposits, of which "savings accounts" are a part. 1 Mason's U. S. Code, Ann. p. 645. Federal laws do not require segregation of such savings deposits, either for identification, safe-keeping, or for investment. The contract in suit is therefore not to be deemed the contract of a savings bank, but rather the contract of a national bank, and the fundamental relation created thereby is solely the relation of debtor and creditor.

"The difference between the two systems as outlined above should be constantly borne in mind, as they account for some of the apparent inconsistencies and conflicts in the authorities." 7 C. J. 852.

As a national bank, defendant is subject to the well-settled general rule: "A bank is bound to know the signatures of its depositors, and the payment of a forged check, however skilfully executed, cannot be deb-

ited against the depositor if he is wholly free from neglect or fault. And it makes no difference that the forgery was committed by a confidential clerk of the depositor, who by his position had unusual facilities for perpetrating the fraud and imposing the forged paper upon the bank." 3 R. C. L. 546, sec. 174. See, also, 7 C. J. 683.

So, too, it is a universal custom of banks to require a written order for the payment of a depositor's funds. Indeed, an oral demand for repayment is insufficient. 7 C. J. 673.

Custom, however, also recognizes a formal receipt duly executed by the drawer and accepted by the drawee bank, as an appropriate substitute for a technical check as between these parties. In the present case all payments in controversy were admittedly made upon forged receipts. Therefore, the rule above quoted is controlling here, unless the "by-laws, rules and regulations" to which plaintiff agreed in writing secure immunity for defendant.

Furthermore, we are dealing with a business affected by a public interest, carried on for a public purpose for the promotion of public good. *State v. Nebraska State Bank*, 124 Neb. 449. It would seem against public policy to permit a bank under these circumstances to contract against liability for the negligence of its officers and agents. 13 C. J. 491; *Zuplkoff v. Charleston Nat. Bank*, 77 W. Va. 621.

In view of the evidence as an entirety, this court is inclined to the view that the depositor's contract with the defendant bank in the instant case embraced in substance, not only the rule heretofore quoted, but also the further provision that no withdrawal should be made save and except in connection with the presentation of the pass-book, accompanied by a valid "savings department receipt" to which the genuine or authorized signature of the depositor was affixed.

The adoption of these "rules" by the formal action of the board of directors of this institution is not shown. Neither does the evidence contain the "by-laws" and "reg-

ulations" which, together with the "rules and regulations governing the savings department of First National Bank of Omaha," plaintiff "agreed to" by executing the "signature card." The words quoted imply the existence of what the bill of exceptions does not include, and the absence of which is not explained.

We are not suggesting that the presence of this evidence is indispensable in view of the condition of the present record, but are calling attention to the fact that this court is limited, in part at least, to secondary evidence to determine the real contract between the parties.

But even if we assume that we are here dealing with a "savings bank" in the true sense of that term, or that under the facts in this case the "savings bank rule" is applicable and controlling, still the defendant may not be relieved from liability.

In 3 Michie, Banks and Banking, sec. 301 (4), it is stated: "The by-laws or rules of savings banks usually contain a provision intended to protect the bank from liability for payments made to one who has wrongfully obtained possession of, and who presents at the bank, a pass-book belonging to a depositor, and it is customary to print such rules in the pass-book. While these by-laws and rules are somewhat variant in phraseology, there is in substance and legal effect much similarity between them. One of these by-laws or rules that is commonly printed in the pass-book provides that all payments to persons producing the pass-book shall be valid payments to discharge the bank. It has been held that such a by-law or rule, or one of similar import, will not prevent a recovery by a depositor whose pass-book has been stolen, or obtained from him by fraud, and the deposit in whole or in part withdrawn, unless the bank used ordinary care in making the payment."

"By-laws of a savings bank, which require the presentation of the deposit book, or due notice to the bank in case of the loss of the book, as conditions precedent to payment to the depositor, or upon his written order,

are reasonable conditions and become a part of the contract between the bank and the depositor, when brought to the notice of the latter.

"When in such case the bank makes payment on presentation of the deposit or pass-book, not to the depositor in person, but upon what purports to be a written order by him and which turns out to be a forgery, the bank is at least bound to act in good faith and to exercise reasonable care with the view to avoid payment to a person who is not lawfully entitled to receive payment; and if in such case it does not so act in good faith and exercise reasonable care, it will be liable to pay again to the rightful owner of the deposit." *Hough Avenue Savings & Banking Co. v. Andersson,* 78 Ohio St. 341.

"A rule of a savings bank that the institution will not be responsible for loss sustained by payment to a stranger, when the depositor has not given notice of loss of his book, since the officers of the institution may be unable to identify every depositor transacting business at the bank, does not relieve the officers of the bank from the exercise of reasonable care to protect the interests of the depositor, and prevent loss to him by payment to a person not entitled to it." *Ladd v. Augusta Savings Bank,* 58 L. R. A. 288 (96 Me. 510).

"A by-law of a savings bank, that it will not be responsible for loss sustained by the payment of a book on presentation when the depositor has not given notice of his book's being lost or stolen, does not relieve the bank from the duty of exercising good faith and due care." *Brown v. Merrimack River Savings Bank,* 67 N. H. 549.

See, also, *Appleby v. Erie County Savings Bank,* 62 N. Y. 12; *Kummel v. Germania Savings Bank,* 127 N. Y. 488; *Wegner v. Second Ward Savings Bank,* 76 Wis. 242; *Koutsis v. Zion's Savings Bank & Trust Co.,* 63 Utah, 254; *Chase v. Waterbury Savings Bank,* 77 Conn. 295; *Ninoff v. Hazel Green State Bank,* 174 Wis. 560; *Zuplkoff v. Charleston Nat. Bank,* 77 W. Va. 621.

Thus, the authorities generally support the proposition that, in an action by a depositor against a savings bank on forged withdrawal slips, the negligence of the depositor as to the manner of handling the pass-book is not involved; the issue being whether or not the bank exercised reasonable care and diligence by paying out the money on forged withdrawal slips to one other than the real depositor. 3 R. C. L. 708, sec. 340; *Brown v. Merrimack River Savings Bank,* 67 N. H. 549; *Chase v. Waterbury Savings Bank,* 77 Conn. 295.

As to the application of this principle where a strictly debtor and creditor relation is involved, see *Wussow v. Badger State Bank,* 204 Wis. 467; *Union Tool Co. v. Farmers & Merchants Nat. Bank,* 192 Cal. 40; *National Dredging Co. v. Farmers Bank,* 6 Penn. (Del.) 580.

In the instant case the trial court, in its instructions to the jury imposed upon the plaintiff the burden of proving by a preponderance of the evidence that the defendant bank, through its employees, was guilty of negligence in paying out the moneys in controversy on forged "savings department receipts." The correctness of this instruction is questioned by appellee. *Noah v. Bowery Savings Bank,* 225 N. Y. 284; *Chase v. Waterbury Savings Bank,* 77 Conn. 295. However, the appellee having presented no cross-appeal, this question is not properly presented by the record, and may not be decided.

From a careful consideration of all the evidence, this court is convinced that, if the rule applicable to savings banks, as contended for by appellant, is to be accepted as controlling, the trial court properly submitted the question of the negligence of the employees of the bank to the jury. The form of this instruction was possibly more favorable to the defendant than it was entitled to, even under the savings bank rule. As this issue was submitted, the determination thereof made by the jury finds ample support in the testimony. It follows that the defendant could not have been prejudiced by the instruction of which it complains.

The judgment of the trial court is correct, and is

AFFIRMED.