94 So.2d 198

THE COMMERCIAL BANK

v.

L. F. HALL et al.

4 Div. 886.

Supreme Court of Alabama.

April 4, 1957.

58

A. R. Powell, Jr., and W. H. Baldwin,. Andalusia, for appellees.

Albrittons & Rankin, Andalusia, for appellant.

MERRILL, Justice.

This cause was tried by the circuit court without a jury under Count 5 of the complaint, in which appellees, L. F. and J. V. Hall, partners d/b/a Hall Tie & Timber Agency, sued appellant, The Commercial Bank at Andalusia, for $1,868.04 for paying a check for that amount after the Halls had filed a written stop payment order with the bank. The trial court entered judgment in favor of plaintiffs and the bank appealed.

The cause is here on an agreed stipulation of facts which, in short, are as follows:

The Halls' bank account was styled "Hall Tie and Timber Agency" and either L. F. Hall or J. V. Hall could sign checks. On May 27, 1954, L. F. Hall issued a check on the account for $1,868.04, being payable to W. M. Avery. On May 29, 1954, J. V. Hall gave the bank a written stop payment order on said check. On June 9, 1954, W. M. Avery presented the check for payment and one of the tellers paid it. The bank did not debit the Hall account with the check until July 15, 1954.

When J. V. Hall wanted to stop payment on the check, he went to the bank, stated his business and was presented with a red bordered form furnished by the bank, and a stenographer employed by the bank filled it out for him. The stop payment order filed by Hall contained the following qualification:

> "The undersigned, hereby agrees to hold the above bank harmless for said amount, as well as for expenses and costs, incurred by said bank through refusing payment of above check, and further agrees to hold said bank free of all liability should payment be made contrary to this request, if such payment occurs through inadvertence or accident only. Request for stop payment shall hold for only thirty days unless request is made in writing to continue same."

The trial court, in sustaining a demurrer to a plea setting up this qualification, or release as we shall subsequently term it, held, in effect, that the release was void as being contrary to public policy.

■ Practically all the authorities cited infra hold that the drawer of an uncertified check has a legal right to stop payment thereof by giving a seasonable stop payment notice to the bank on which it is

drawn, and, if the bank thereafter pays such check, it is liable therefor. That is the bank's common law liability and it grows out of the relationship of the parties, which is that of debtor and creditor. After receipt of a notice to stop payment, the bank pays at its peril. See also, Southern Bank & Trust Co. v. Whited, 25 Ala.App. 309, 145 So. 832; Bank of Moulton v. Rankin, 24 Ala.App. 110, 131 So. 450, certiorari denied 222 Ala. 188, 131 So. 454; Peoples Savings Bank & Trust Co. v. Lacy, 146 Ala. 688, reported in full 40 So. 346.

■ Appellant aptly states the major question in these words—"the primary point for consideration and decision in this case is the validity of that provision of the written stop payment order relieving drawee bank of all liability should payment be made through inadvertence or accident only."

This question is one of first impression in this Court, and has been decided in only eight states. The first case was decided in 1920, in Tremont Trust Co. v. Burack, 235 Mass. 398, 126 N.E. 782, 9 A.L.R. 1067. It was there held that the consideration for the clause relieving the bank from its liability springs from the mercantile relation of the parties and the reciprocal rights and obligations which the law attaches to that relation. It further held that the provision was not void as against public policy, despite the fact that it, in effect, relieved the bank from liability for payment through the negligence of its employees. In 1926, the Court of Appeals of New York followed the Massachusetts case in Gaita v. Windsor Bank, 251 N.Y. 152, 167 N.E. 203. In 1932, the Indiana Appellate Court followed the Massachusetts and New York cases in Hodnick v. Fidelity Trust Co., 96 Ind.App. 342, 183 N.E. 488.

The first case to hold differently was Hiroshima v. Bank of Italy, 78 Cal.App. 362, 248 P. 947, decided in 1926. It was there held that such a provision relieving the bank against liability was void as against public policy. There appears to be some question as to the applicability of some California statutes to the question, but the issue was met squarely by the Ohio Supreme Court in 1948, in the case of Speroff v. First-Central Trust Co., 149 Ohio St. 415, 79 N.E.2d 119, 1 A.L.R.2d 1150. That court considered the cases previously decided on the point and held that the release was void, both on the ground of lack of consideration and as being against public policy. (An annotation on the subject is found in 1 A.L.R.2d 1155).

A year later, 1949, the question was presented to the Supreme Court of Errors of Connecticut. That court reviewed the cases on both sides of the question and held that the release was not supported by a consideration and was unenforceable. Having reached such a conclusion, it did not consider the question of whether it was void as against public policy. Calamita v. Tradesmens Nat. Bank, 135 Conn. 326, 64 A.2d 46.

In 1950, in Michaels v. First National Bank of Scranton, 73 Pa.Dist. & Co.R. 29, the court reached the same conclusion as that reached by the Connecticut court, but apparently without the benefit of that decision as it is not cited.

Then in 1951, the New Jersey Superior Court followed the Connecticut decision after reviewing the authorities in Reinhardt v. Passaic-Clifton Nat. Bank & Trust Co., 16 N.J.Super. 430, 84 A.2d 741, affirmed 9 N.J. 607, 89 A.2d 242.

We have carefully considered the cases on each side of the question and we have concluded that the better reasoning is found in those cases which hold the release void for the lack of consideration. Chief Justice Weygandt, speaking for the Ohio Supreme Court, in Speroff v. First-Central Trust Co., 149 Ohio St. 415, 79 N.E.2d 119, 122, 1 A.L.R.2d 1150, said:

"* * * The defendant bank was aware that a check 'is simply an order

which may be countermanded and payment forbidden by the drawer any time before it is actually cashed or accepted' and that an order to stop payment may be either oral or in writing so long as it conveys to the bank a definite instruction to that effect. Under the reciprocal rights and obligations inherent in the relationship existing between a bank and its depositors, it was the duty of the defendant not to pay the check after receiving such an order from the plaintiff depositor. Hence, when the plaintiff was asked to sign a statement or release to the effect that the bank would not be held responsible if it should pay the check through inadvertency or oversight, this was something new—an element that concededly had not previously existed in their relationship. What benefit or consideration was received by the plaintiff as the promisor and what detriment was suffered by the defendant bank as the promisee as a result of the new statement or release? Clearly there was no compliance with either of these fundamental requirements as to a consideration. On the contrary, the plaintiff promisor thereby received no benefit but suffered a detriment, and the promisee suffered no detriment but received a benefit.

"Consequently the Court of Appeals was not in error in holding the purported release void for want of consideration. * * *"

We quote from Calamita v. Tradesmens Nat. Bank, 135 Conn. 326, 64 A.2d 46, 49:

"That brings us to the question whether the stipulations waiving liability were supported by any consideration. It was a part of the original contractual relation between the parties arising out of the keeping of the account in the bank that it would obey any stop orders on checks under penalty of damages should it fail in its duty in that regard. The stipulations in the request, if effective, would amount to a change in the contractual relationship between the parties by virtue of which the plaintiff surrendered certain rights. They would be unenforceable unless supported by a proper consideration. Novak v. Kurcon, 85 Conn. 534, 535, 84 A. 88; Carrano v. Shoor, 118 Conn. 86, 100, 171 A. 17. In the briefs of counsel it is pointed out that the bank had the right at any time to refuse to deal further with the plaintiff, and the fact that it continued his account is claimed to be a sufficient consideration for the waiver he signed. Had the bank, when he expressed his desire to stop the check, stated to him that, unless he agreed to the stipulations, it would close out his account, we would have a very different situation; but there is no allegation that it did so. So far as appears he was not induced to sign the stipulations by any statements it made, and the mere fact that the relationship between him and it continued would be no consideration for his waiver. Papallo v. Meriden Savings Bank, 128 Conn. 563, 565, 24 A.2d 472; Linvitz v. Galeckis, 110 Conn. 174, 177, 147 A. 592. [Similarly see Hart v. Coleman, 192 Ala. 447, 68 So. 315, Watson v. Reynolds, 54 Ala. 191]. 'Consideration must actually be bargained for as the exchange for the promise.' Restatement, 1 Contracts, p. 81; see 1 Page, Contracts, 2d Ed., § 522. The stipulations contained no promise by the bank for the benefit of the plaintiff, nor would they result in any detriment to it. As stated in Speroff v. First-Central Trust Co., 149 Ohio St. 415, 420, 79 N.E.2d 119, 1 A.L.R.2d 1150, the plaintiff thereby received no benefit but suffered a detriment and the defendant suffered no detriment but received a benefit. There was no consideration for the release of the right of the plaintiff to recover damages if the defendant unjustifiably failed to obey the request, and the stipulations in it were ineffective to bar that right.

"It is not necessary to consider whether, if supported by a consideration, the stipulations would be unenforceable as against public policy. * * *"

Also pertinent is the following from Reinhardt v. Passaic-Clifton Nat. Bank & Trust Co., 16 N.J.Super. 430, 84 A.2d 741, 744:

"However, we need not pursue further the issue of public policy since we are satisfied that the defendant's release clause was without consideration and not binding upon the plaintiff. When the plaintiff first opened her checking account the parties entered into their debtor-creditor relation without any suggestion of a release clause. Cf. Cosgrove v. Provident Institution, 64 N.J.L. 653, 46 A. 617 (E. & A.1900). Consequently, the defendant came under contractual obligation to disburse only according to the plaintiff's order and to follow her timely instruction in the event she desired to stop payment on an outstanding check. The plaintiff's action culminating in the letter of January 25, 1950 constituted unequivocal instruction in writing to the defendant not to honor check No. 6267. The defendant's only real undertaking, which might be advanced as consideration for the release clause, was to do what it was already under clear obligation to do; by the established rule in our State that did not constitute legal consideration. Levine v. Blumenthal, 117 N.J.L. 23, 186 A. 457 (Sup. Ct.1936). [Similarly see South & North Ala. R. Co. v. Highland Ave. & Belt R. Co., 119 Ala. 105, 24 So. 114]. The defendant suggests that it could have terminated the plaintiff's checking account and it refrained from doing so because the plaintiff signed the release clause. But the record does not support any such understanding between the parties. On the contrary, that subject was never mentioned and presumably was not considered; in any event the suggested consideration was admittedly never 'bargained for as the exchange for the promise.' See 1 Restatement, Contracts, p. 81 (1932); Calamita v. Tradesmens Nat. Bank, supra.

"In the light of the foregoing we may ignore the release clause and apply the acknowledged common law principles governing the defendant's responsibilities. It paid the check in violation of the plaintiff's timely written direction and came under obligation to pay her the full amount thus improperly disbursed and charged against her account. 5 Michie, Banks and Banking, p. 359 (1932); 7 Am. Jur. p. 441 (1937). * * *"

We might add as a practical matter, that it does not appear reasonable to hold that a stop payment order seasonably made orally, by telegram or by letter, can impose liability on a bank when disregarded, and yet hold that a regular red bordered stop payment form, furnished by the bank, removes all liability for negligence in failing to heed the stop payment order, merely because a release is printed under the stop payment order.

Having held the release to be void for the lack of consideration, it is not necessary to discuss the question of public policy.

█ Appellant urges that the stop payment order did not properly describe the check because the check was signed "Hall Tie & Timber Agency by L. F. Hall," while the stop payment order was signed "Hall Tie & Timber Agency by J. V. Hall." The stipulation of facts shows that either L. F. or J. V. Hall were authorized to sign checks against the account of Hall Tie & Timber Agency. We think this sufficient to show the lack of merit in appellant's contention, and we need not go into the question of estoppel raised by the bank's acceptance of the stop payment order and its failure to debit the account of Hall Tie and Timber Agency with the amount of the

check until more than thirty days after it had paid same.

It is also argued by appellant that the trial court erred in overruling and denying the bank's motion to transfer the cause to equity.

The denial of a motion to transfer a cause from the law docket to the equity docket, under Tit. 13, § 153, Code 1940, is not reviewable on appeal. Wiggins v. Stewart Bros., 215 Ala. 9, 109 So. 101; Pickens County v. Johnson, 227 Ala. 190, 149 So. 252. Mandamus is the proper remedy. Ex parte Tennessee Valley Bank, 231 Ala. 545, 166 So. 1; Ex parte City of Bessemer, 240 Ala. 52, 197 So. 20; Edge v. Bonner, 257 Ala. 385, 59 So.2d 683.

The judgment of the circuit court is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.