HAMAN, Appellant v. FIRST NATIONAL BANK IN SIOUX FALLS, Respondent

(115 N.W.2d 883)

(File No. 9935. Opinion filed June 19, 1962)

Rehearing denied September 14, 1962.

566

**Dana, Golden, Moore & Rasmussen,** Sioux Falls, for Plaintiff and Appellant.

**Jones & Matthews,** Sioux Falls, for Defendant and Respondent.

ROBERTS, J. This is an action by the drawer of a check against the drawee bank seeking judgment in the amount of $1,000 being the amount of the check charged to plaintiff's account after request to stop payment was made by the drawer. The trial court granted defendant's motion for judgment notwithstanding the verdict. Plaintiff has appealed.

Plaintiff drew and delivered the check in Minneapolis, Minnesota, on November 14, 1956, payable to the order of the Calhoun Realty Company for the purpose of making a down payment on purchase of a bowling alley. The conflicting evidence was sufficient to present a question of fact as to whether a request to. stop payment had been made before the check had been accepted, certified or paid. The jury could reasonably have found that plaintiff the day the check was written and delivered telephoned de-

fendant bank in Sioux Falls and talked to assistant vice president R. M. Hahn and stated that he wanted to stop payment on the check. Mr. Hahn told plaintiff to make his request in writing. Plaintiff made such a request in a letter mailed on November 14, 1956. Plaintiff's check was received by defendant bank and charged to his account on November 17, 1956.

The check in question was returned to the plaintiff on December 18, 1956, together with other canceled checks and bank statement for the month of November, showing that the check had been charged to plaintiff's account. At the time the account was opened plaintiff signed a card on which among other provisions were printed the following: "This bank will not be liable for any amount paid on any forged * * * check, nor for **any difference of account,** unless written notice thereof is delivered to this bank within 10 days after date of mailing or delivering the depositor's statement" and "Any request for stop payment must be in writing on a form prescribed by this bank, and this bank will not be liable * * * for paying the item through **accident or oversight**". We hereinafter refer to this instrument as the deposit contract. Plaintiff did not report or give notice of any claimed error in the statement of his account until the latter part of January, 1957, at which time he complained of the failure of the bank to stop payment as requested. Plaintiff testified that Mr. Hahn suggested that he bring to the bank the copy of the letter requesting the bank to stop payment and any records that he might have pertaining to the check and that an attempt would be made to adjust the matter. Mr. Hahn testified that he knew of no claim of error in the account until a short time before the present action was instituted in October, 1959.

In his memorandum decision the learned trial judge reviewed the evidence at length and concisely stated the reasons that compelled him to grant defendant's motion for judgment notwithstanding the verdict as follows: "At the time the account was opened the plaintiff signed an

agreement therefor which was received in evidence without objection. * * * As I construe the term 'difference of account' it includes not only mathematical errors or mistakes in accounting, but also any difference in the account as kept or claimed by the customer and as made by the bank. This would include differences caused by the payment by mistake from the account of any check or item. In the latter category would necessarily be included a check which was mistakenly paid after a stop payment order had been made. * * * In case of a difference of account the agreement requires that notice thereof be given to the bank. Plaintiff urges that a notice was not necessary for the reason that the bank had actual knowledge of the claimed difference and that the law does not require a useless act. It can be said that the bank had knowledge of its own act but the purpose of the notice is not only to inform the bank of the fact of improper payment but of plaintiff's claims and intentions. * * * Perhaps as the jury found defendant was at fault but the point is if the notice had been given it might have been able to have shown the contrary. At any rate, it appears to be a reasonable construction of the contract to conclude that notice should be given in such cases so that a bank with multiple transactions is forewarned in sufficient time so that it may ascertain the facts and protect itself against unjust claims. * * * The court's decision that defendant's motion should be granted is based on the belief the contractual provision discussed is valid, that the bank did not waive compliance therewith and that it was prejudiced by plaintiff's failure to do so."

　　■ ■ The relationship between a bank and its depositor is that of debtor and creditor. Barbour v. First Citizens Nat. Bank of Watertown, 77 S.D. 106, 86 N.W.2d 526. A check is no more than an order on the bank to pay a stated amount to the named payee from the drawer's account and does not operate as an assignment of any part of the funds to the credit of the drawer. SDC 46.1602, 46.-1606. The drawer of a check, before presentation to the bank and acceptance, certification or payment, may stop or delay

payment. It is conceded that defendant bank owed plaintiff depositor the absolute duty to pay out his money only according to plaintiff's order. If there is a breach of a depositor's instruction to stop payment, a bank under accepted common law principles becomes obligated to pay the depositor the amount charged against his account. It is contended that the stipulations referred to limit liability on paying a check in disregard of a stop payment order and are valid and enforceable.

■ ■ There can be no mistake in regard to the meaning of the words any "difference of account" in the deposit contract. As we have stated the relation of a bank and depositor is simply that of debtor and creditor. The bank agrees with the depositor to receive and credit his deposits and to honor his checks to the amount of his credit when checks are presented. The term "account" as used in such agreement is an account in the ordinary acceptation of that term, that is, a statement of debits and credits entered on the books of the bank during a stated period of time. In 103 A.L.R. 1147, there appears the following summary of the law with respect to the duty of a depositor, in the absence of an express agreement, to examine statement of his account and report discovered discrepancies: "The later decisions support the general rule that it is the duty of a depositor in a bank to examine the balanced pass book, statement of account, or canceled checks returned to him by the bank, within a reasonable time after receiving them, and to report to the bank any forgeries, or other discrepancies in the amounts, which he may discover." Under the general law and the terms of the deposit contract plaintiff was required to examine the statement and to report any discrepancy resulting from debiting the check in controversy.

■ The deposit contract limits the time within which to examine and give notice of "difference of account" to ten days after date of mailing or delivery of bank statement to the depositor. A bank undoubtedly has the right to determine for itself whether or not it will accept

a deposit and it may agree upon the terms and conditions on which the deposit will be accepted so long as they are not in conflict with a controlling statute or other rule of law. In McCormick v. Rapid City Nat. Bank, 67 S.D. 586, 297 N.W. 39, the deposit contract limited the time within which to examine and give notice to 15 days after receiving a monthly statement. There is here no claim that plaintiff did not have sufficient time and reasonable opportunity to examine the November statement and canceled checks and to report discrepancy, if any, within the 10 day period. More than 'that number of days 'elapsed before plaintiff called attention to the failure of the bank to stop payment of the check in controversy. Upon the authority of the McCormick case, provisions of the deposit contract whereby the depositor agreed to examine monthly statements and to report forgeries or other discrepancies in the amounts which he may discover became a part of the contract between the bank and the depositor and in the absence of waiver or other special circumstance are binding.

The deposit contract as we have indicated also includes the limitation that the bank shall not be liable for paying a stop payment item through "accident or oversight". Such stipulations relieving banks from liability for payment of checks in disregard of stop payment orders are usually contained in stop payment orders. The weight of authority supports the view that such a stipulation in a stop payment order constitutes a valid and enforceable contract. Gaita v. Windsor Bank, 251 N.Y. 152, 167 N.E. 203; Chase Nat. Bank of City of New York v. Battat, 297 N.Y. 185, 78 N.E.2d 465; Thomas v. First Nat. Bank of Scranton, 173 Pa. Super. 205, 96 A.2d 196; cf. Brunswick Corp. v. Northwestern Nat. Bank & Trust Co., 214 Minn. 370, 8 N.W.2d 333, 146 A.L.R. 833; see also cases collected in 175 A.L.R. 79, 1 A.L.R.2d 1155, and in 60 A.-L.R.2d 708. Other authorities are to the effect that such a stipulation in a stop payment order is invalid on the ground of want of consideration and as against public policy. Speroff v. First-Cent. Trust Co., 149 Ohio St. 415, 79 N.E.2d 119, 1 A.L.R.2d 1150, is illustrative of this view. These

courts reason that a bank having money to the credit of a depositor is not at liberty to demand a waiver of liability before undertaking performance of the legal duty to honor a stop payment order. The instant case is not like that presented. The provisions under consideration became at the time of opening the account a part of the contract entered into between plaintiff depositor and the bank. This distinction was recognized by the court in Reinhardt v. Passaic-Clifton Nat. Bank & Trust Co., 16 N.J.Super. 430, 84 A.2d 741, wherein the court points out that when plaintiff depositor first opened her checking account the parties entered into their debtor-creditor relationship without suggestion of a release clause. The provisions of the deposit contract releasing the bank from liability from paying a stop payment item as the result of accident or oversight absolves the bank except, of course, for willful disregard of a stop payment order.

■ Plaintiff seeks to excuse his failure to examine the monthly statement and to report the discrepancy. The argument made is that the bank was negligent in paying the check and therefore the fact that plaintiff was contributorily negligent in not examining the monthly statement and reporting to the bank within 10 days was not material. It is contended too by plaintiff that notice of a fact is never necessary when there is actual knowledge by the party entitled to receive notice. In Flaherty v. Bank of Kimball, 75 S.D. 468, 68 N.W.2d 105, this court construed a statute (SDC 6.0422) with respect to the question whether negligence or knowledge of the facts affected the bar of a cause of action of a depositor who had failed after return of checks to give timely notice to the bank of forged or altered checks. It was decided that these factors did not have the effect of relieving the depositor of his duty to notify the bank. We think that the contractual provisions involved herein must be given a like interpretation. Thus in Brunswick Corp. V. Northwest National Bank & T. Co., supra, a passbook provision limited to 10 days the time within which to examine and give notice of errors. It was there contended that since the bank in the first in-

stance was negligent in paying forged checks the plaintiff could recover regardless of whether or not he had examined statements and canceled checks returned to him. In discussing this phase of the case the court said:

> "Contractual limitations and regulations of liability for negligence are valid and binding. * * As indicated by Mr. Justice Cardozo in Murray v. Cunard S. S. Co., 235 N.Y. 162, 139 N.E. 226, 26 A.L.R. 1371, the limiting of time in which a notice must be given is a regulation, rather than an exoneration."

We need not pursue the inquiries further since we are satisfied that the provisions requiring notice to the bank of "difference of account" and those relieving the bank from liability for payment of a stop payment item through "accident or oversight" except, of course, for willful disregard of such an order, constituted binding contractual obligations upon the plaintiff barring recovery. It follows that the trial court correctly entered judgment for defendant notwithstanding the verdict.

Judgment affirmed.

RENTTO, P. J., and SMITH, J., concur.

HANSON, J., (dissenting).

The ultimate issue here is whether the defendant bank or the plaintiff despositor should sustain loss of a check negligently paid by the bank in disregard of the depositor's timely and valid order to stop payment. The failure of the bank to honor the stop payment order is unexplained. Likewise, there is no evidence to show the bank exercised, or attempted to exercise, ordinary or reasonable care in the matter. Instead, the bank seeks to exonerate itself from all liability for its negligent conduct by reason of the following two provisions written in fine print on the reverse side of the depositor's signature card:

I. "This bank will not be liable for any amount paid on any forged or altered item including forged indorsements, nor for any missing cancelled check, nor for any difference of account, unless written notice thereof is delivered to this bank within 10 days after date of mailing or delivering the depositor's statement; and if the depositor fails to give such notice, or if any statement or cancelled checks are lost in transit, the bank's record of the account shall be accepted as correct," and

II. "Any request for stop payment must be made in writing on a form prescribed by this bank, and this bank will not be liable in any way for refusing payment of the item nor for paying the item through accident or oversight."

The Depositor's Contract was written and prepared by the bank. Its provisions serve to limit, restrict, or entirely exonerate the bank from its common law duties and responsibilities to its depositors. As such it should be construed most strongly against the bank and most liberally in favor of its depositors. People's Gin Co. v. Canal Bank & Trust Co., 168 Miss. 630, 144 So. 858, 146 So. 308; Franklini v. Bank of America Nat. Trust & Sav. Ass'n, 31 Cal. App.2d 666, 88 P.2d 790; 5 Zollman Banks & Banking, Sec. 3404, p. 377.

The two contractual provisions are patently incompatible and cannot reasonably be conjointly construed together in favor of the bank. The second provision deals expressly and exclusively with stop payment requests. It purports to relieve the bank from all liability "in any way * * * for paying the item through accident or oversight." This absolute exemption from liability is inconsistent with the 10-day notice of any difference of account clause. In other words, the difference of account clause allows a depositor ten days of grace. If he gives the bank notice of any difference of account within that period the bank is liable. Thus, the "difference of account" clause obviously was never intended to apply to checks paid by the bank in disregard of a stop payment request. The express provision

which purports to relieve the bank from all liability for failure to honor a request to stop payment precludes application of the general inconsistent "difference of account" clause in accord with the elementary rule of construction that the express mention of one thing implies the exclusion of another. This ancient rule of "expressio unius est exclusio alterius" applies to the construction of contracts as well as statutes. Maytag Company v. Alward, Iowa, 112 N.W.2d 654.

In my opinion the remaining stipulation which purports to release the bank of all liability for negligently paying a check after receiving a request to stop payment is contrary to public policy and void.

There is little freedom of contract between a depositor and a bank. Their bargaining positions are not equal. A depositor must accept the services of a bank on its terms or not at all. We have said that commercial banking is affected with public interest. Wall v. Fenner, 76 S.D. 252, 76 N.W.2d 722. Banks are franchised and statutorily protected against open competition. Most communities of this state have only one bank. Charters are sparingly granted only after a showing of public convenience and necessity. McKinnon et al. v. State Banking Commission et al., 78 S.D. 407, 103 N.W.2d 179. It would logically follow that banks, like common carriers, public utilities, and other franchised businesses affected with a public interest, should not be allowed to relieve themselves from all liability for negligent conduct by contract. This was the conclusion reached by the Nebraska court in the case of Hernandez v. First Nat. Bank of Omaha, 125 Neb. 199, 249 N.W. 592, wherein the court held that a bank was affected with a public interest and "It would seem against public policy to permit a bank under these circumstances to contract against liability for the negligence of its officers and agents."

Other courts have considered the validity of similar stipulations. Some courts have upheld validity in the following cases:

MASSACHUSETTS—Tremont Trust Co. v. Burack (1920), 235 Mass. 398, 126 N.E. 782, 9 A.L.R. 1067.

NEW YORK—Gaita v. Windsor Bank (1929), 251 N.Y. 152, 167 N.E. 203, but see Montano v. Springfield Gardens Nat'l Bank, 207 Misc. 840, 140 N.Y.S.2d 63 and Capritta v. Nat'l Com. Bk. & Trust Co., 26 Misc.2d 71, 206 N.Y.S.2d 726.

INDIANA—Hodnick v. Fidelity Trust Co. (1932), 96 Ind. App. 342, 183 N.E. 488.

Early annotators have referred to these cases as the "weight of authority" 175 A.L.R. 78 and, more recently, as the "slight preponderance of authority", 1 A.L.R.2d 1155. However, numerous recent cases have swung the pendulum in the opposite direction. Today the decided weight of authority holds such stipulations invalid either as against public policy or for lack of consideration in the following cases:

CALIFORNIA—Hiroshima v. Bank of Italy (1926), 78 Cal. App. 362, 248 P. 947.

OHIO—Speroff v. First Central Trust Co. (1948), 149 Ohio St. 415, 79 N.E.2d 119, 1 A.L.R.2d 1150.

SOUTH CAROLINA—Carroll v. South Carolina Nat. Bank (1947), 211 S.C. 406, 45 S.E.2d 729.

CONNECTICUT—Calamita v. Tradesmens Nat. Bank (1949), 135 Conn. 326, 64 A.2d 46.

NEW JERSEY—Reinhardt v. Passaic-Clifton Nat. Bank & Trust Co. (1951), 16 N.J.Super. 430, 84 A.2d 741, affirmed on opinion below 9 N.J. 607, 89 A.2d 242.

PENNSYLVANIA—Thomas v. First Nat. City Bank of Scranton (1954), 376 Pa. 181, 101 A.2d 910, reversing Superior Court opinion reported in 173 Pa.Super. 205, 96 A.2d 196.

ALABAMA—The Commercial Bank v. Hall (1957), 266 Ala. 57, 94 So.2d 198.

Since 1926 Indiana has been the only court to uphold the validity of a contract stipulation relieving a bank from liability for payment of a check in disregard of a stop payment order. Seven courts have declared them invalid. Sound reasoning dictates we should do likewise.

It is interesting to note the Uniform Commercial Code reflects the prevailing view on this question. According to Section 4-103 Subsection 1 thereof "* * * no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure * * *."

I would accordingly reverse the judgment appealed from. '

BIEGELMEIER, J., concurs in dissent.