[No. 3309.]

## A. C. HAWKINS *v.* V. HAWKINS, DUANE BALLARD AND ISAAC R. HALL.

SETTING ASIDE CONTRACT FOR FRAUD.—If a person enters into a contract with another, between whom and himself no relation of especial trust or confidence exists, and it is reduced to writing by such other person, and the means of a knowledge of the terms of the writing are equally open to both, and he signs it without reading, or having it read by some one for him, he cannot avoid a liability created by the writing, even if its terms differ from the contract as agreed on verbally. The fact that he is illiterate does not change the rule.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

The following facts were alleged in the complaint: The plaintiff owned several hundred tons of wheat lying in the sack in Solano County, part of it north of Putah Creek, and part of it south of that creek. Defendants Ballard and Hall were commission merchants and partners, doing business in San Francisco, and purchasing wheat in Solano County, and defendant Hawkins was their agent in Solano County. Defendant Hawkins, as such agent, contracted with the plaintiff to buy his wheat, that part of it north of Putah Creek for twenty-seven dollars per ton, and that part south of Putah for twenty-seven and one-half dollars per ton. Plaintiff and defendant Hawkins told Hall what the contract was, and he then drew up the following contract in writing:

"I hereby sell to V. Hawkins, from eleven to fourteen hundred tons of wheat in the Wolfskill Ranch; the part lying on the south side Putah at 1.27½ (one twenty-seven and

half cts.), and the part on the north side of said creek at 1.27 (one twenty-seven cts.), on ranch; said grain to be sacked in good order.

"June 27, 1867."

The plaintiff did not read the writing or hear it read, but defendants Hawkins and Hall told him it was like the verbal agreement, and supposing they told him the truth, he signed it. They knew the writing was not like the verbal agreement, and told him it was, to defraud him, and to induce him to sign it. The defendant Hawkins assigned the written contract to the other two defendants, and the plaintiff delivered them three hundred and seventy tons of wheat on the south side of Putah Creek, and four hundred and twenty-five tons on the north side. That they paid him for the wheat at the price fixed in the writing, and he receipted for it, telling them that if it was not right he should ask for a correction. Upon going home, he discovered the fraud that had been practiced on him, and asked them to rectify it, but they refused. The difference between the price as agreed on, and that fixed in the writing, was $1463.62. The plaintiff was illiterate, and scarcely able to read writing. The plaintiff asked to have the written contract and receipt declared void, and for judgment for the sum of $1463.62. The defendant demurred to the complaint, the court sustained the demurrer, and judgment was rendered for the defendants. The plaintiff appealed.

*Tully R. Wise*, for the Appellant.

Whenever the contents of a paper are wrongly stated, courts can set it aside and set up the correct paper. (See *Vorley* v. *Cooke*, 1 Giff. 234; *Donaldson* v. *Gillett*, L. R., 3 Eq. 277; Kerr, 50.)

Even an innocent mistake becomes a fraud, if, when discovered, it is not corrected. (Kerr, p. 67, and authorities cited.)

The doctrine of *caveat emptor* does not apply to cases of positive fraud and misrepresentation. Our courts have held the same views. (*Belden* v. *Henriques*, 8 Cal. 67.)

*H. F. Crane,* for the Respondents.

In the case of *Board of Commissioners* v. *Younger* (29 Cal. 176), this Court says: "But a court of equity will not relieve a party from a contract on the ground of misrepresentation, where no confidential relation exists between the parties, and where the means and sources of knowledge, being equally accessible and open to both, the party complaining has no right to place reliance upon the statements of the other; for the law aids the vigilant, not the idle, and will not undertake the care of persons who will not, with the means at hand, take care of themselves."

So Chancellor Kent says, at page 484, 2d vol. Commentaries: "The common law affords to every one reasonable protection against fraud in dealing; but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information." Story's Eq. Jurisprudence, Sec. 200 *a.*)

By the COURT:

The demurrer was properly sustained. It does not appear from the complaint that any relation of especial trust or confidence existed between the parties to the contract, or that the means of knowledge as to the terms and conditions of the writing were not equally open and accessible to both. The care and diligence of a prudent man in the transaction of his business would demand an examination of the instrument before signing, either by himself or by some one for him in whom he had a right to place confidence.

The fact that the plaintiff was illiterate, and could read manuscript only with difficulty, did not render this precaution less necessary.

Judgment affirmed.