RAYMOND v. GLOVER et al.*

No. 19,335; September 4, 1894.

37 Pac. 772.

**Vendor and Vendee.—Where an Agent for the Sale of Land,** intrusted with a deed thereof, through the negligence of the vendee, who knew that he was authorized to deliver the deed only after a purchase money note and mortgage were executed to the vendor, fraudulently took the note and mortgage in his own name, there was no valid delivery, and the vendor was entitled to a lien for the price, as against an innocent purchaser of the mortgage.[1]

**Vendor and Vendee.—Where a Vendee Signs a Purchase Money Mortgage,** payable to the vendor's agent, under the belief that it is payable to the vendor, after having ample opportunity to examine it, he cannot contest its validity as against an innocent purchaser.

APPEAL from Superior Court, Los Angeles County; Walter Van Dyke, Judge.

Action by Ellen D. Raymond against George W. Glover, Sarah J. Glover, George Munroe and the German-American Savings Bank to establish a vendor's lien. Plaintiff had judgment and the defendant bank appeals, and, by a crossbill, seeks to foreclose a mortgage. Affirmed and remanded.

Walter Bordwell and Chapman & Hendricks for appellant; Lee & Scott and Wilson & Lamme for respondents.

TEMPLE, C.—This appeal is from the judgment, with a bill of exceptions. The complaint, as amended, shows: That on the first day of July, 1891, plaintiff owned a certain tract of land in the county of Los Angeles, and on that day entered into an agreement with the defendant George W. Glover to sell to him said tract of land for $1,800, of which sum $500 was to be paid in cash, and $1,300 to be secured by mortgage on the place, payable in three years, with interest at nine per cent per annum. That plaintiff was absent from the state, and the sale was negotiated by her through defendant George

---

*For subsequent opinion, see 122 Cal. 471, 55 Pac. 398.

1 Cited in the note in 130 Am. St. Rep. 947, on escrows.

Munroe. That afterward, to wit, January 22, 1892, plaintiff executed and forwarded to said Munroe a deed duly signed and acknowledged, conveying said property to George W. Glover and Sarah J. Glover, his wife, with instructions to deliver the same to George W. Glover upon receiving the promissory note of said Glover and wife, secured by mortgage as provided in said agreement, and the payment of $500 cash. That said Munroe received the deed, and, in violation of the instructions to him, gave into the possession of defendant George W. Glover said deed without receiving the said promissory note or mortgage, and said Glover caused the deed to be recorded in the recorder's office of Los Angeles county. Though said Glovers paid the said sum of $500, they wholly failed to execute said note and mortgage, or pay the said sum of $1,300 or any part thereof, and the same is still unpaid. That said Munroe, at the time he gave said deed into the possession of said Glover, fraudulently prepared a note and mortgage for $1,300, running and payable to himself, and induced said Glovers to execute the same under the belief that plaintiff was named in said note and mortgage as payee. That the defendant the German-American Savings Bank afterward caused said mortgage to be recorded, claiming to be the assignee thereof. That said note and mortgage were executed and delivered without the knowledge or consent of plaintiff. That she had no knowledge of such facts until after the pretended assignment to the defendant bank. That said note and mortgage were without consideration other than as herein set forth, and were taken by said Munroe in violation of his duty, and in fraud of plaintiff's rights. That at the time of the delivery to said George W. Glover of said deed and the execution and delivery to him of said note and mortgage, said Glover had full notice of the agency of said Munroe, and that said Munroe had no right or authority to take such note and mortgage. That the sole consideration for the note and mortgage was the conveyance, and said Munroe had no authority to take them otherwise than in the name of plaintiff, of which facts the bank had full notice. She asks the court to decree that the note and mortgage were accepted, taken and held by Munroe as her trustee, and are now held by the bank as her trustee, or that she has a vendor's lien upon the premises for $1,300 and interest, and such other relief as

may be equitable. The appellant, the bank, answered, denying all the allegations in the complaint, and averring an assignment to itself for a valuable consideration and without notice. Appellant also filed a cross-complaint, in which it seeks to foreclose the mortgage. To this cross-complaint the Glovers answer, averring that the note and mortgage were wholly without consideration and were procured by fraud. They also filed a cross-complaint, in which they set out the alleged fraud and want of consideration, and ask to have the note and mortgage declared void. To this cross-complaint the appellant answered, denying the fraud, and pleading want of notice, and its purchase for a valuable consideration.

The court found the sale of the land as averred by the plaintiff; that plaintiff was a nonresident; that she signed and acknowledged the deed, and sent the same to Munroe with the instructions averred; that Munroe handed the deed to Glover without taking his note or mortgage as he was instructed to do; that Munroe received the said $500 from Glover, but, instead of taking the note and mortgage payable to plaintiff, fraudulently prepared a note and mortgage for the same amount payable to himself, and, with intent to deceive said Glovers, represented to them that the note and mortgage were made in favor of plaintiff, in accordance with the terms of the agreement, and pretended to read the papers to the Glovers, but fraudulently read the name of plaintiff as payee; that, relying upon the representations and deceived by the false practices, the Glovers executed the note and mortgage fraudulently prepared by Munroe, believing that they were payable to plaintiff and in accordance with their agreement; that the note and mortgage were so executed without the knowledge or consent of plaintiff, who did not know of the fraud until after the assignment of the bank.

The note and mortgage were without consideration, and were taken by Munroe in violation of his duty, and in fraud of the rights of plaintiff. At the time of the execution of said note and mortgage, said Glovers well knew that Munroe had no authority to accept such a note and mortgage, or any note or mortgage in his own name. Afterward, on the 23d of February, 1892, said Munroe assigned the note and mortgage to defendant bank as security for the payment of a note of $1,000 then borrowed by Munroe from the bank. Prior to

receiving said assignment and to the loaning of said money by the bank, its cashier, for the purpose of ascertaining the value of the property, and also whether said Glovers had any setoff or other defense to the note and mortgage, went with Munroe to the residence of George W. Glover, and thereupon said Munroe, without the hearing of the cashier, stated to Glover that he (Munroe) had bought the note and mortgage from plaintiff. Thereupon, said cashier told said Glover that the bank was about to loan to Munroe $1,000 upon the note and mortgage which he and Mrs. Glover had given, and asked how much he was owing on it, and if it was all right, to which Glover replied that $1,300 was due on the mortgage, and it was all right. Glover did not then know that Munroe had been named in the note and mortgage as payee, but believed that the note and mortgage had been purchased by Munroe. The representation was made without any intent to mislead the bank and in the honest belief that Munroe had bought the note, and had the right to hypothecate it. The court failed to find whether the bank loaned the money to Munroe, and took the assignment in good faith, without notice of plaintiff's equities. The evidence shows, however, without contradiction, that the appellant acted in entire good faith, without knowledge that plaintiff had any claim to the debt, or that Munroe had ever been her agent or that she had been the owner of the land.

The first question which presents itself is whether there was a valid delivery of the deed. There was an agreement in writing, in which the terms of the sale were fully stated. The Glovers, therefore, knew perfectly well that the deed was not to be delivered until the note and mortgage were executed to plaintiff. Munroe was a special agent, and the possession of the deed under the circumstances had no tendency to show ostensible authority. The delivery of the deed was therefore in violation of the power of the agent. Schultz v. McLean, 93 Cal. 329, 28 Pac. 1053, is not opposed to this conclusion. In that case the purchaser did not know of any conditions in regard to the delivery of the deed other than those with which he had complied. He had made an offer for the land. The agent of the grantors notified him of the acceptance of his offer. As a matter of fact, according to the finding, the grantees did not accept the offer, but asked further consideration.

The agent falsely told the purchaser that his offer was accepted and the grantors that their counter offer was accepted. The deed was then passed, each party believing upon terms he had proposed. The misunderstanding was through the fraud of plaintiff's agent. The vendors and vendee met several times during the negotiations. It was held that the agent was enabled to accomplish the fraud in consequence of the negligence of the grantors. They were therefore compelled to bear the loss. Plaintiff here has been guilty of no neglect. Nor can I see how the case differs as to the appellant. The claim is that because Munroe was the agent of plaintiff, and was placed in a position where he could consummate the fraud because of such agency, therefore plaintiff must bear the loss. There may be language in some of the cases which would sanction this broad statement of the rule. The rule, however, is not peculiar to the law of agency, but is general. Generally, it is stated as in our code: ''Where one of two innocent parties must suffer by the act of a third, he by whose negligence it happened must be the sufferer'': Civ. Code, sec. 3543. The statement is slightly self-contradictory, but really, I think, states the true rule. Beyond this, I see no justice in it. The fact that one has been placed by my act in a position which will enable him to defraud another does not make me liable—not even if I have trusted a dishonest man, and · thereby raised his credit. If I lend my horse to one who proves to be a rogue, and he, taking advantage of his possession, sells the horse, the purchaser cannot hold me for it. But it was not even the trust reposed in Munroe by plaintiff that placed in his hands the instrument which enabled him to defraud appellant. Her instructions were explicit, and were well known to the only parties with whom he was authorized to deal. Whatever, therefore, may be the rights of the bank, as against Glover, I think it plain that plaintiff is entitled to the first lien upon the property to secure her debt of $1,300.

But the case is very different between Glover and the bank, assuming, as we must, that the bank took the security without notice. The note was non-negotiable, and naturally the obligor could interpose any defense against a purchaser which he had against the payee named. But the bank, before taking the security, sent its agent to Glover, and, after informing him

of the contemplated loan, inquired if he had any defense, and was informed by Glover that he had none. It is found that Glover did not then know that the note had been originally given to Munroe, but believed that plaintiff had assigned it to Munroe. Even had such been the fact, it was a lack of diligence to assure the bank that Munroe's title was all right upon Munroe's word that he had bought the note. But there was gross negligence in the execution of the note. I do not mean to say that Glover could not have defended against Munroe, though some of the cases seem to go that far. But it is the precise case provided for in the maxim quoted—that, when one of two innocent men must suffer, he shall bear the loss whose negligence has occasioned it. There would be very little use in having written instruments if there were no presumption that when one signs such he does so knowing what he is signing. Men do not usually execute such papers until they have carefully examined them. It must be, therefore, that to execute them without such care is negligence. The business of the world could hardly be carried on upon any other hypothesis. There was no fiduciary relation between Munroe and Glover. On the contrary, their interests were adverse. It appears, further, that Munroe practiced no arts to induce Glover to sign without reading. The mortgage and note were filled out at Glover's house, and in his presence. The note was a printed form, and with only a few blanks to fill, one of which necessarily was the name of the payee. When they were finished and ready to sign, Munroe did not volunteer to read them, but handed them to Glover and requested him to read them. Glover said his eyes were bad, and requested Munroe to do so. It is hard to believe, under such circumstances, that Munroe contemplated any such deceit as the court finds. The notary, the only really disinterested witness, testified that the note and mortgage were correctly read. There was, however, conflicting testimony, and the court finds that they were incorrectly read. But Glover had no right to trust his adversary, and, when the question is whether he or an innocent party must suffer for his negligence, he must bear the loss: Hawkins v. Hawkins, 50 Cal. 558; Blaisdell v. Leach, 101 .Cal. 405, 40 Am. St. Rep. 65, 35 Pac. 1019; Plummer v. Bank, 90 Ind. 386; 2 Herman on Estoppel, sec. 1004.

As there is no finding upon the question raised as to the good faith and want of notice of the bank, the case should be remanded, with directions to find whether or not the bank took the note as security without notice of the facts tending to show its invalidity. This fact may be found upon the evidence already taken, with such further evidence upon that subject as the parties may see fit to submit. If the court finds for the appellant upon that subject, the plaintiff should be allowed a preferred lien for $1,300 and interest, as provided in the contract of sale, and the bank should be allowed to retain the lien of its mortgage, subject to plaintiff's lien, to the extent of its debt against Munroe.

We concur: Vanclief, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion, the cause is remanded, with directions to find whether or not the bank took the note as security without notice of the facts tending to show its invalidity. This fact may be found upon the evidence already taken, with such further evidence upon that subject as the parties may see fit to submit. If the court finds for the appellant upon that subject, the plaintiff should be allowed a preferred lien for $1,300 and interest, as provided in the contract of sale, and the bank should be allowed to retain the lien of its mortgage, subject to plaintiff's lien, to the extent of its debt against Munroe.

### ADDITIONAL OPINION.

### October 3, 1894.

PER CURIAM.—The opinion heretofore filed herein is modified by striking out the following paragraph: "Whatever, therefore, may be the rights of the bank, as against Glover, I think it plain that plaintiff is entitled to the first lien upon the property to secure her debt of $1,300," and inserting in lieu thereof the following: "Whatever, therefore, may be the rights of the bank, the plaintiff, as against Glover, is entitled to a lien upon the property to secure her debt of $1,300." The judgment rendered herein is set aside, and the following judgment is given: For the reasons given in the foregoing opinion the cause is remanded, with directions to find whether

or not the bank took the note as security, without notice of the facts showing the equities in favor of the plaintiff. This fact may be found upon the evidence already taken, with such further evidence upon that subject as the parties may see fit to submit. If the court finds that the appellant took the note as security, without notice of the facts showing such equities, judgment should be rendered giving to the appellant a first lien upon the property for the amount of his claim, and to the plaintiff a second lien thereon to the extent of $1,300 and interest, as provided in the contract of sale.