[Civ. No. 5297.   Third Appellate District.—March 6, 1936.]

LOUIS FRANKINI, Appellant, v. BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION (a Corporation), Respondent.

Frank L. Murphy and Ralph Thomas Lui for Appellant.

McLaughlin & McLaughlin, S. J. Tosi and Devlin, Devlin & Diepenbrock for Respondent.

THOMPSON, J.—The plaintiff has appealed from a judgment which was rendered against him pursuant to an instructed verdict of a jury. The suit was brought to recover $1345 which was paid by the bank in cashing forty-nine forged checks from the plaintiff's account therein. In support of the judgment it is contended the plaintiff waived his right to maintain this action by failing to claim credit for the amount thus wrongfully paid within ten days from the time covered by the bank's statements as required by the terms of a written agreement to that effect.

The plaintiff is a truckman in Sacramento who employs several drivers, among whom was William Rose. For a number of years prior to the time which is involved in this litigation, Mr. Frankini maintained an active checking account in the Bank of America and its predecessor, the Bank of Italy, in the city of Sacramento. During all that time the plaintiff used a room at his home as a business office. In that office he kept a roll-top desk in which there was always a supply of blank checks on which there was printed his name, occupation and residence. In this desk he also kept a mechanical "pro-

tectograph'' with which he was accustomed to impress ¢r perforate in the issued checks the amounts for which they were drawn. He filled out the checks in green ink.

Mr. Rose was in the habit of calling at the plaintiff's house for his wages and knew where the blank checks, the ink and protectograph were kept. In November, 1931, his employment with the plaintiff was terminated. Thereafter he procured a skeleton key to fit the door of plaintiff's house, and in his absence, on numerous occasions, entered the home during the months of November and December, 1931, and in January and February, 1932, during which period of time he drew forty-nine checks ranging in amounts from $20 to $40, in the aggregate sum of $1345, payable to himself or other employees of the plaintiff. In drawing these checks the plaintiff's printed check forms were used, together with his green ink and the protectograph. The name of the plaintiff was forged by Rose thereon and the checks were then promptly cashed through the medium of a bootlegger with whom he dealt. After the forgeries were discovered, Rose was promptly apprehended, confessed the crimes and was convicted and imprisoned therefor. He was a witness at the trial of this case and testified to the preceding facts. There is no question regarding the forgeries or the payment of these checks by the bank.

Before the defendant Bank of America succeeded the Bank of Italy in Sacramento the plaintiff signed a printed form designated an ''Authorization to Mail Statement and Vouchers''. After requesting that the bank send to him periodically his bank statements with canceled checks listed during such period, that document recited that:

''In consideration of the compliance with this request the undersigned promises to notify you [the bank] of any error and to make any claim for credit or refund within ten days after the expiration of the time covered by the statement.''

The instrument then provides that ''This request and authorization is to remain in force and effect until revoked in writing.'' Pursuant to this request monthly statements of the plaintiff's bank account were prepared and forwarded to him by mail, together with all canceled checks listed therein, on the first day of each following month. These statements for the months of November and December, 1931, and Janu-

ary, 1932, were received by the plaintiff in due time and left on his desk unopened until the early part of February, when he delivered the three packages to an accountant to check over the various statements. On the 9th or 10th of February this accountant informed the plaintiff that twenty-one canceled checks were missing from the January statement. These missing checks had evidently been stolen by Mr. Rose. On that same day the plaintiff went to the bank and told Mr. Vandenberg, the vice-president, of the missing checks. Mr. Vandenberg testified in that regard: "I immediately proceeded to investigate." He took the February checks which the bank then held to the plaintiff and they examined them together. The witness further said: "There was an extraordinary large number of checks drawn to a man by the name of John Perry. . . . It gave him [Mr. Frankini] concern, and he says 'I didn't write those checks, those aren't my checks.' "

Following the plaintiff's personal notice to the bank and the discovery of the forgeries, the February statement of his bank account was transmitted to him about March 1st. This statement included thirteen forged checks paid in that month for the aggregate sum of $365. On March 5th the plaintiff demanded of the bank the repayment of the aggregate sum of $1345 which was charged against his account for cashing the forty-nine forged checks, which was refused. This suit was commenced September 12, 1932. The cause was tried with a jury. At the close of the evidence the court instructed the jury to render a verdict in favor of the defendant. This was done. A judgment was accordingly entered against the plaintiff. From that judgment this appeal was perfected.

Assuming, without so deciding, that the plaintiff was bound under the authorities of *Kimmell* v. *Skelly*, 130 Cal. 555, 561 [62 Pac. 1067], *Hawkins* v. *Hawkins*, 50 Cal. 558, and 13 Corpus Juris, page 370, section 249, by the terms of his signed request for monthly statements of his account, to notify the bank of any errors therein contained "within ten days after the expiration of the time covered by the statement" on penalty of forfeiture of a right to claim credit therefor, we are of the opinion the court erred in directing a verdict in favor of the defendant under the circumstances of this case.

The question as to whether a bank is guilty of negligence in paying a forged check drawn upon the account of a

depositor therein is usually one for the determination of the jury after the actual payment of a forged check has been established. So, also, the question as to whether a depositor has exercised due care in promptly examining his pass-book, paid checks or a statement of his account is for the decision of the jury. (*Leather Mfg. Nat. Bank* v. *Morgan,* 117 U. S. 96 [6 Sup. Ct. 657, 29 L. Ed. 811].) ▇ It is error to withdraw the case from the jury if there is any substantial evidence to support the liability of the bank therefor. The well-established rule with respect to the liability of a bank for the payment of a forged check from the account of a depositor therein is expressed in the case of *Union Tool Co.* v. *Farmers & Mechanics Nat. Bank of Los Angeles,* 192 Cal. 40, at page 46 [218 Pac. 424, 28 A. L. R. 1417], as follows:

"It is a well-settled general rule that as between a bank and its depositor the bank is only warranted in paying out the money of the depositor on his genuine order and in accordance therewith. If payments be made on a forged check, with no attendant circumstances sufficient to create an equitable estoppel as against the depositor, or there has been no prior negligence by the depositor contributory to the payment of the check, no degree of care on the part of the bank will excuse it from liability."

We may not say as a matter of law that the plaintiff was guilty of negligence which contributed to a justifiable payment of the forged checks by the bank merely because he left his blank checks, green ink and protectograph on his desk in his private office in his home. He may not be deemed to have reasonably anticipated that some thief and forger would procure a skeleton key and unlawfully enter his home in his absence to obtain these means of forging the checks. At least that question of negligence was for the determination of the jury.

The authorities appear to hold that when the bank is guilty of negligence in the payment of a forged check, in the absence of an agreement to the contrary, it may be liable for the payment of a forged check even though the depositor has neglected to promptly examine his pass-book or statement of account so as to discover the error. It is said in that regard in the case of *Glassell Dev. Co.* v. *Citizens' Nat. Bank of Los An-*

*geles,* 191 Cal. 375, at page 380 [216 Pac. 1012, 28 A. L. R. 1427]:

"The weight of authority, and perhaps of reason, supports the view that when a depositor's pass-book has been written up and returned to him with canceled checks which have been charged to his account, it is his duty to examine such checks within a reasonable time, and if they disclose forgeries or alterations to report them to the bank, failing in which he cannot, if his failure results in detriment to the bank, dispute the correctness of payments thereafter made by it on similar checks. . . .

"This rule, however, assumes that the bank itself has not been guilty of negligence in making the payment, for when by the exercise of proper care it could have discovered the alteration or forgery, it must bear the loss notwithstanding that the depositor failed in his duty to examine the accounts."

█ In the present case the defendant pleaded that the plaintiff was estopped from maintaining this action for failure to claim credit or to object to the several bank statements within ten days of the receipt thereof, by virtue of his written agreement to that effect. The burden was on the bank to establish that defense. It does not appear that the plaintiff signed an "Authorization to Mail Statements and Vouchers" to him, which did contain the statement that "the undersigned promises to notify you [the bank] of any error and to make any claim for credit or refund within ten days after the expiration of the time covered by the statement". The plaintiff testified that he did not know the document contained that limitation of time within which to object to the accuracy of the statements. This provision was not called to his attention. Under the authorities heretofore cited, he may be charged with knowledge of the contents of a document which he signed, in the absence of deceit or constructive fraud in procuring his signature. The record contains no evidence of fraud in that regard. But the instrument was presented to him as a mere written request for monthly statements. This instrument was retained by the bank. Section 340, subdivision 3, of the Code of Civil Procedure allows one year in which to commence an action against a bank for the payment of a forged check, and yet this written document limits the time for challenging the wrongful payment to ten days "after the expira-

tion of the time covered by the statement". It will be observed the depositor is not even allowed ten days from the time of receiving the statement from the bank. Under a strict construction of that language the transmission of the statement might be delayed by the bank until the depositor would have no time or opportunity to challenge its accuracy. It seems like a harsh rule. In the case of *Los Angeles Inv. Co.* v. *Home Savings Bank of Los Angeles,* 180 Cal. 601, at page 613 [182 Pac. 293, 5 A. L. R. 1193], regarding a similar provision printed in a depositor's pass-book, the court says:

"There is no reason, so far as we know, why a depositor may not make such an agreement if he deliberately chooses to do so, unreasonable as it is. . . . It must appear affirmatively that he consented and agreed to it either by being required to sign it, or by having his attention particularly called to it."

Assuming for the purpose of this appeal without so deciding that the plaintiff was presumed to know that he was limited to ten days "after the expiration of the time covered by the statement" within which to notify the bank of a claim for reimbursement for the payment of forged checks, and that the statements covered the entire month, it may be true that he waived his right to object to the November and December statements for failure to notify the bank within the time prescribed. The burden was on the defendant to establish that waiver.

Regarding the January statement, the record shows that notice of the twenty-one missing checks was called to the attention of the bank on the "9th or 10th of February" and that Mr. Vandenberg, the vice-president, took the February checks to the plaintiff at that time when they examined them together. At that time Mr. Frankini said regarding the forged checks "those aren't my checks". That repudiation of the February statement was definite and should have placed the bank on notice that the January statement was also erroneous so as to require an investigation with respect to it. It is a significant fact tending to show negligence on the part of the bank that it had passed and paid forty-nine different forged checks within a period of three and a half or four months. That repudiation of the February checks was within ten days "after the expiration" of the 31st day of January,

which we assume was the last day covered by that statement. At least there is some evidence that this notice was within the time prescribed by the written agreement, which would require that matter to be submitted to the jury.

■ With respect to the February statement which was received by the plaintiff March 1st, the previous notice to the bank which was made February 9th or 10th was sufficient to comply with the written requirement and entitled him to maintain the action with respect to the thirteen forged checks aggregating the sum of $365, at least. Moreover, demand was made on the bank March 5th for reimbursement for the money paid on all of the forged checks. That feature of the case, at least, rendered it erroneous for the court to direct the jury to render a verdict in favor of the defendant on all of the issues of the case. After the bank had specific notice of the repudiation of the February forged checks, it could not bind the plaintiff by afterwards rendering a statement which included these very checks which had been previously denounced as false.

For the reason that the court erroneously directed the jury to return a verdict in the defendant's favor on all the issues of the case, the judgment is reversed.

Lemmon, J., *pro tem.*, and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 4, 1936, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 4, 1936.