[Civ. No. 5951.   Third Appellate District.—March 23, 1939.]

LOUIS FRANKINI, Plaintiff and Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS AS-SOCIATION (a National Banking Association), Defendant and Appellant.

Frank L. Murphy and Ralph Thomas Lui for Plaintiff and Appellant.

Devlin, Devlin & Diepenbrock, Horace B. Wulff and S. J. Tosi for Defendant and Appellant.

TUTTLE, J.—This is an action brought to recover from the defendant bank the aggregate amount of a number of forged checks which were charged to the account of plaintiff. The trial court directed the jury to bring in a verdict in favor of the bank on those checks cashed during the months of November and December, 1931, and January of 1932, and such a verdict was rendered.

On checks cashed during the month of February, 1932, the issues were submitted to the jury, and a verdict found for defendant. The judgment was that plaintiff take nothing by reason of the action. Thereafter the court granted a· motion for new trial as to the verdict found by the jury with respect to the February checks, on the ground of insufficiency of the evidence. Plaintiff now appeals from the judgment resulting from the directed verdict, and defendant appeals from the order granting the motion for new trial.

There is little dispute as to the material facts of the case. The plaintiff, Louis Frankini, was a depositor in defendant bank, and had been such for many years prior to the commencement of the action. In the year 1928, at the request of the bank, plaintiff signed and delivered to the bank the following agreement:

"AUTHORIZATION TO MAIL
STATEMENT AND
VOUCHERS.

"Louis Frankini, name of account. To Bank of Italy National Trust and Savings Association.

"You are hereby requested and authorized to send by mail not registered the statement of the deposit account of the undersigned, together with all canceled checks pertaining to it, unless otherwise directed herein, to the undersigned at the following address: In consideration of your compliance with this request, the undersigned promises *to notify you of any error, and to make any claim for credit or refund within ten days after the expiration of the time covered by the statement.* This request and authorization is to remain in force and effect until revoked in writing. Signed: Louis Frankini, 5208 Folsom Boulevard. (Italics ours.)"

Pursuant to said contract defendant mailed to plaintiff monthly written statements of his account, together with can-

celed checks paid during the months of November and December, 1931, and January of 1932. Plaintiff admitted the receipt of each of the three monthly statements in due course of mail, and further admitted that he placed said statements, unopened, in his desk drawer, where they remained until his bookkeeper called for them in the early part of February, 1932. His testimony was to the effect that if he had examined the statements he would have discovered the forgeries.

During the months of November and December, 1931, and January and the first ten days of February, 1932, the defendant bank accepted a number of checks drawn upon it, on which the name of plaintiff was forged as maker. These checks were all made out by William Rose, a former employee of plaintiff, to employees and former employees of plaintiff, and said William Rose forged the names of these employees on the endorsements. The defendant debited the plaintiff's commercial account with the amount of the forged checks in the sum of $1345, and plaintiff seeks to recover that amount. These forged checks were forty-nine in number. Five of them totalling $130, were cashed during the month of November, 1931. Ten, amounting to $290, were cashed during the month of December, 1931. Twenty-one, amounting to $560, were cashed during the month of January, 1932. Thirteen, amounting to $365, were cashed during the month of February, 1932. On February 10, 1932, plaintiff first discovered the errors arising out of the forgeries, which appeared in these statements, and on that date he notified the bank of such discovery.

This case, upon practically the same facts, was before this court on appeal, the decision being filed March 6, 1936, and reported in 12 Cal. App. (2d) 298 [55 Pac. (2d) 232]. We there held that the trial court erred in directing a verdict for defendant with respect to the forged checks for the months of January and February, 1932. We expressly refrained from passing upon the legality of the contract mentioned above.

It is admitted that the evidence in this case is identical with that in the former case, with one exception, which is pointed out by respondent, who states that the record now shows that the statement of plaintiff's account for the month of January, 1932, was for the period ending January 29th instead of Janu-

ary 31st—the date which we assumed to be correct on the former appeal. This statement of the evidence appears to be correct. The decision in the former case holds that there was sufficient evidence of negligence on the part of the bank in cashing the forged checks to make out a case for the jury, and that plaintiff was not, as a matter of law, himself negligent. We now take that to be the law of the case before us. In that connection, however, we deem it proper to point out a few of the facts in the record which would support a finding of negligence on the part of the bank. During the four-month period involved, the bank cashed forty-nine forged checks drawn on the account of the plaintiff. Each of these contained *two* forged signatures, the signature of plaintiff as maker, and the endorsed signature of the payee. It appears that plaintiff had maintained an account in the bank for many years prior to these transactions, and his signature card had been on file with the bank during that time. This original card is before us in the record, together with the forged checks. Having carefully examined these exhibits, we are satisfied that the jury would have been justified in finding that if the bank had compared the genuine signatures with the forged signatures of plaintiff at any time, they would have rejected the forged checks. For illustration: in making the final ''s'' on his given name, plaintiff used the conventional method of completing that letter with a short line to the right leading from the bottom of the letter. In none of the forty-nine forged checks do we find that line. It is entirely omitted. We do not purport to detail all the facts which would support a finding of negligence, but merely refer to this one, which is so apparent and obvious. ■■■ While ordinarily, commercial practice may not permit the teller of a bank to constantly make such comparisons, it is certainly the duty of the employee to acquaint himself with the signature of the customer; otherwise, the latter would have no protection whatever against forgeries.

■■■ Taking up first, the appeal of plaintiff, it is contended that the court erred in directing a verdict for the defendant. Respondent seeks to uphold the directed verdict covering the checks cashed during the months of November and December, 1931, and January, 1932, upon two grounds: First: That the failure of the plaintiff to notify the bank within a reasonable

time, of any error or forgeries, gave rise to an account stated between the parties; and, Second: That plaintiff was bound by the terms of the contract to give such notice within ten days "after the expiration of the time covered by this statement", and having failed to give such notice, he had no recourse whatever against the bank. Conceding that there is sufficient evidence of negligence on the part of the bank, it is nevertheless contended by the respondent that the two defenses mentioned above are so conclusively proven that the jury had no alternative but to sustain them, and that as a matter of law no other verdict was reasonably possible. If this contention is correct, the action of the trial court in directing a verdict should be sustained. "The question as to whether a bank is guilty of negligence in paying a forged check drawn upon the account of a depositor therein, is equally one for the determination of the jury after the actual payment of a forged check has been established. So, also, the question as to whether a depositor has exercised due care in promptly examining his pass-book, paid checks, or a statement of his account, is for the decision of the jury. (*Leather Mfg. Nat. Bank* v. *Morgan,* 117 U. S. 96 [6 Sup. Ct. 657, 29 L. Ed. 811].) It is error to withdraw the case from the jury if there is any substantial evidence to support the liability of the bank therefor. The well-established rule with respect to the liability of a bank for the payment of a forged check from the account of a depositor therein is expressed in the case of *Union Tool Co.* v. *Farmers & Mechanics Nat. Bank of Los Angeles,* 192 Cal. 40, at page 46 [218 Pac. 424, 28 A. L. R. 1417], as follows: 'It is a well settled general rule that as between a bank and its depositor the bank is only warranted in paying out the money of the depositor on his genuine order and in accordance therewith. If payments be made on a forged check, with no attendant circumstances sufficient to create an equitable estoppel as against the depositor, or there has been no prior negligence by the depositor contributory to the payment of the check, no degree of care on the part of the bank will excuse it from liability.' We may not say as a matter of law that the plaintiff was guilty of negligence which contributed to a justifiable payment of the forged checks by the bank merely because he left his blank checks, green ink and protectograph on his desk in his private office

in his home. He may not be deemed to have reasonably anticipated that some thief and forger would procure a skeleton key and unlawfully enter his home in his absence to obtain these means of forging the checks. At least that question of negligence was for the determination of the jury. The authorities seem to hold that when the bank is guilty of negligence in the payment of a forged check, in the absence of an agreement to the contrary, it may be liable for the payment of a forged check even though the depositor has neglected to promptly examine his pass-book or statement of account so as to discover the error. It is said in that regard in the case of *Glassell Dev. Co.* v. *Citizens' Nat. Bank of Los Angeles,* 191 Cal. 375, at page 380 [216 Pac. 1012, 28 A. L. R. 1427] : 'The weight of authority, and perhaps of reason, supports the view that when a depositor's pass-book has been written up and returned to him with canceled checks which have been charged to his account, it is his duty to examine such checks within a reasonable time, and if they disclose forgeries or alterations, to report them to the bank, failing in which, he cannot, if his failure results in detriment to the bank, dispute the correctness of payments thereafter made by it on similar checks. . . . This rule, however, assumes that the bank itself has not been guilty of negligence in making the payment, for when, by the exercise of proper care, it could have discovered the alteration or forgery, it must bear the loss, notwithstanding that the depositor failed in his duty to examine the accounts.' '' (*Frankini* v. *Bank of America, etc.,* 12 Cal. App. (2d) 298 [55 Pac. (2d) 232].) ''If it (the bank) was negligent; if its officers are found to have failed to exercise due and reasonable care in detecting the forgery or fraud, then the subsequent negligence of the depositor, his failure to perform his duty in examining his pass-book and vouchers with reasonable care, and to report to the bank, in a reasonable time, any errors or mistakes, *would constitute no defense.*'' (7 Am. Jur., p. 371, par. 516) citing numerous authorities. Summarizing briefly the rule as it pertains to the contentions here, it appears that though one is bound under the law to use diligence in examining his account after it is received from the bank, he is nevertheless excused from performing such duty if in fact the bank has failed to use ordinary care in detecting the forged signatures.

■ Taking up the defense of "account stated," there are in reality three accounts involved in the directed verdict. It is undisputed that the bank was notified of the forgeries when they were first discovered by plaintiff, on February 11, 1932. The first statement was mailed and received by plaintiff on or about November 30th; the second, on December 31st, and the third on January 29th. Each statement contained some canceled forged checks. There are therefore three varying periods of time to be considered. It appears without question that such defense is here predicated upon the silence and acquiescence of the customer, under the rule that if the account is sent to the debtor and he does not object to it within a reasonable time, his acquiescence will be taken as an admission that the account is truly stated. (1 Cal. Jur. 197.) But as we have seen, mere acquiescence is no defense where there is evidence of actual negligence on the part of the bank. This rule, if logically applied, would seem to be broad enough to cover any conduct of the customer in respect to failure to examine accounts, which conduct amounts to mere acquiescence, and hence would apply to the defense of accounts stated under the facts here. The basis of such defense is the mere passive conduct on the part of the customer, and we see no reason why the rule laid down in the Glassell case, above cited, should not, with equal force and logic, be applied to the defense of mere acquiescence, no matter what form it may take. If we have a given state of facts which, under the rule laid down by the courts of this and most jurisdictions, constitute no defense in an action of this character, can this rule be nullified in its application by merely designating that defense as an "account stated"? Unless there is some magical implication in the words last quoted, the answer must be in the negative. ■ Furthermore, we are not prepared to hold, as a matter of law, that each of the varying periods of time was unreasonable in length. Those issues should be submitted to the jury under appropriate instructions, and the jury should not be deprived of the right to pass upon them.

It follows that a defense based upon the theory of accounts stated, where acquiescence alone is relied upon, is not in itself such an absolute defense to this action as to preclude the jury from passing upon the question of the negligence

of the defendant. A very similar case is that of *Wussow* v. *Badger State Bank*, 204 Wis. 467 [234 N. W. 720, 236 N. W. 687]. There, a recovery against the bank upon forged checks was affirmed. The pertinent facts are as follows:

"The plaintiff made no examination of his returned checks at all. He received paid checks and accompanying statements from the bank at intervals, *signing at each time a receipt reciting that he agreed to 'examine same carefully and report all differences, or missing vouchers, if any, within ten days, otherwise, the account will be considered correct'.* Each bank statement contained the following: 'Please examine at once. If no error is reported in ten days the account will be considered correct,' and 'all items are credited subject to final payment'."

The court disposed of the defense of account stated, based upon the signed writing, in the following language:

"The defendant also contends that the court should have awarded judgment in its favor because the statements received by the plaintiff constituted an account stated. It is urged that the recitals printed on the signature card and on the statements themselves mentioned in the statement of facts support this contention. The recitals, except as to the ten day provision, do no more than state the implied legal obligation of the depositor. A bank can hardly limit the depositor's time to make examination or fix the "effect of omission to do so by 'setting a trap for the unwary' in this way. Only by affirmatively showing that the depositor expressly so agreed, by having his attention called directly to it, could such a statement have the force of a contract. (*Los Angeles Inv. Co.* v. *Home Savings Bank*, 180 Cal. 601 [182 Pac. 293, 5 A. L. R. 1193].) The testimony of the plaintiff that the statement was never called to his attention or noticed by him precludes giving to the statement the dignity and effect of a contract, either to constitute the statements accounts stated or relieve the bank from its liability for payment of forged checks."

We will take up next the defense that the "Authorization to Mail Statement and Vouchers" constituted a contract, and that the failure to notify the bank within ten days after receipt of the statement absolutely precluded a recovery. The undisputed evidence shows that plaintiff signed

this writing without reading the same, and that the provisions of the writing were never called to his attention by the bank. It will be noted that the writing purports to obligate the depositor in requiring him to give notice of errors, but no corresponding or reciprocal promise is made on behalf of the bank; *in fact the bank does not agree or promise to perform any act whatever.* It may, or may not, at its option, mail a statement of the account. Furthermore, the time from which the ten-day period begins to run, is fluctuating, vague and indefinite. This tie is fixed in the following language: "Within ten days after the expiration of the time covered by the statement." An examination of the statements admitted as exhibits here, fails to show any designation of the "time covered by this statement". █ We are in full accord with the rule invoked by respondent bank in its opening brief, as laid down in the case of *Beeson* v. *Schloss,* 183 Cal. 618 [192 Pac. 292], where it is said:

"It is a well-settled proposition of law that the parties to a contract may stipulate therein for a period of limitation, shorter than that fixed by the statute of limitations, *and that such stipulation violated no principle of public policy, provided the period fixed be not so unreasonable as to show imposition or undue advantage in some way.* (Citing many cases)."

Respondent further states that the provision of the contract for the giving of notice within ten days is binding upon the parties, *unless it can be said that such period is so unreasonable as to show imposition or undue advantage.* We are of the opinion, however, that the contract here is unreasonable for the reason that it *does* show imposition and undue advantage. An imposition is defined as "An excessive, unwarranted or uncalled for requirement or burden." (Webster's New International Dictionary, 2d ed.) We believe that the term of this contract, relating to the time when the ten-day period commences to run, as explained above, stamps this so-called contract as an imposition upon the customer, and that the placing, in large type at the top of the printed card, of words which referred to comparatively inconsequential matter, instead of emphasizing a clause, the ignoring of which might mean financial ruin to the depositor, would appear to be so misleading as to come under the category

of an undue advantage. This is the plain implication of the reference by the Supreme Court to a writing identical in *form*, though not in language. It was there characterized as a "trap for the unwary". (See Home Bank case, following.) This is also the inference which may be drawn from the following reference to this identical writing when it was before this court in the former appeal, though its validity was not adjudicated. Speaking through Mr. Justice Thompson we said:

"But the instrument was presented to him as a mere written request for monthly statements. This instrument was retained by the bank. Section 340, subdivision 3 of the Code of Civil Procedure allows one year in which to commence an action against a bank for the payment of a forged check, and yet this written document limits the time for challenging the wrongful payment to ten days 'after the expiration of the time covered by the statement'. It will be observed the depositor is not even allowed ten days from the time of receiving the statement from the bank. Under a strict construction of that language the transmission of the statement might be delayed by the bank until the depositor would have no time or opportunity to challenge its accuracy."

No case has been called to our attention where such a contract as now under consideration has been upheld. In the case of *Los Angeles Inv. Co.* v. *Home Sav. Bank,* 180 Cal. 601 [182 Pac. 293, 5 A. L. R. 1193], the writing involved required the depositor to report any errors in the statement "within ten days after *receipt* thereof". Nevertheless, the court there characterized the writing as a "trap for the unwary", and refused to give any contractual effect to it, for the reason that it was unsigned and attention of the depositor was not specifically called to the provision in question. As noted, however, *that* contract was not subject to the infirmity inherent in the one here considered. Zollman, in his late work on "Banks and Banking", referring to "Special Contract by Depositor", and concluding the section upon that subject, adds: "Nor will the courts indulge in a liberal construction of their terms in favor of the bank". (Vol. 5, p. 377.) We therefore conclude that the writing in question, if it can be said to have the form of a binding

agreement, is unreasonable and void. ■ In reaching this conclusion we believe that the power of the courts to carefully scrutinize transactions of this character is derived through the right of the state to exercise police power over banking institutions, and from the inherent nature of the business conducted. "Though banks are organized and financed by private individuals for personal gain, they are in a sense public institutions, subject to legislative regulation, examination and control. It is therefore well established that the State, under its police power, may regulate the banks within its borders". (Zollman on Banks and Banking, vol. 9, pages 12 and 13.) "In the progress made in the industrial and economic world within comparatively recent years, the business of banking has ceased to be, if indeed it ever was, a purely private enterprise. Such business affects so intimately the commercial welfare and business interests of the people as to render it a proper subject of regulation by the State in the exercise of the police power. (*People* v. *Bank of San Luis Obispo,* 154 Cal. 194 [97 Pac. 306].) The public patronage which the banker invites and receives is of such a character that *he becomes in a just sense the trustee of the fiscal affairs of the people of the State (State Savings & Commercial Bank* v. *Anderson,* 165 Cal. 437 [L. R. A. 1915E, 675, 132 Pac. 755].)*" (Bank of Italy* v. *Johnson,* 200 Cal. 1–12 [251 Pac. 784].)

Throughout its presentation of this phase of the appeal, respondent adheres to the view that a contract between a bank and customer should be viewed in the same light as contracts in general, irrespective of the *quasi*-public nature of the business in which one of the parties is engaged. The error of this view is plainly set forth in the case of *Meadowcroft* v. *People,* 163 Ill. 56 [45 N. E. 991, 35 L. R. A. 176, 54 Am. St. Rep. 447], where it is said:

"The contention is, that every person living under the protection of our state government has the right to be engaged in the prosecution of any one of the ordinary and common callings or business pursuits that is innocent in itself and has been followed from time immemorial, on the same terms that govern those engaged in other ordinary and common callings of business pursuits of life, and as incident thereto has the right to make the same contracts relative

thereto as those engaged in such other ordinary and common callings or business pursuits are allowed to make; . . . The fundamental error in the contention thus formulated is the assumption that the business of banking stands upon exactly the same footing that the ordinary industrial pursuits of farming, merchandising, manufacturing, and mining, and the many other common occupations of life, stand upon. The business of a banker is not *juris privati* only, but, like that of an innkeeper or common carrier, is affected with a public interest, and therefore subject to public regulation.''

■ Summarizing the entire matter with reference to the appeal of plaintiff, it appears that there is in the record sufficient evidence of negligence on the part of the bank in cashing the forged checks to justify a finding by the jury to that effect; that neither of the two defenses, based on the account stated and the contract between the parties, was established to the extent that they, or either of them, absolutely precluded the jury from considering the negligence of the defendant, and therefore, the court was not, by reason of the proof of such defenses, justified in instructing the jury to find for the defendant.

■ Taking up the appeal by defendant from the order granting the motion for new trial, it appears that such motion was granted upon the ground that the evidence was insufficient to sustain the verdict. ''The rule is well established that the granting or denying of a new trial upon the ground that the evidence is insufficient to justify the verdict, where there is a substantial conflict in the evidence, rests so fully in the *discretion of the trial court* that its action is conclusive upon this court, unless it appears that there has been an abuse of discretion.'' (Italics ours.) (*Springer* v. *Pacific Fruit Exchange,* 92 Cal. App. 732–734 [268 Pac. 951].)

What we have said upon the appeal by plaintiff is equally applicable on *this* appeal. There was evidence which would justify a finding by the jury to the effect that defendant was guilty of negligence. The defenses set up did not conclusively negative such negligence. It was still a question for the jury. If the trial court was not satisfied with the sufficiency of the evidence to sustain a verdict, it had the right to grant a new trial, in the exercise of sound discretion. We cannot say that such discretion was here abused.

That portion of the judgment resulting from the directed verdict is reversed. The order granting a motion for new trial on the other issues is affirmed. Plaintiff to recover costs on appeal.

Thompson, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, .after judgment in the District Court of Appeal, was denied by the Supreme Court on May 22, 1939.