Thomas R. Jones, J.
On March 4, 1958, plaintiff, James E. David, opened a checking account with the Manufacturers Trust Company, which later became the defendant, Manufacturers Hanover Trust Company. In so doing he affixed his signature to a card, commonly known as a 11 signature card ’ ’, although it bore no title or legend to describe its purpose. However, at the top of the card and above the line for the depositor’s signature were 11 lines of fine print, the 9th and 10th lines of which read:
*1081 “ Depositor(s), in any litigation in which the Trust Company and any of them shall be adverse parties, waive(s) trial by jury ”.
On July 1,1960, when Manufacturers Trust Company became Manufacturers Hanover Trust Company, plaintiff indorsed another “ signature card ” at the bank’s request, which also bore no caption or declaration to describe its purpose. Included in the fine print on the second card was a statement that: “In any litigation in which depositor(s) and the Trust Company shall be adverse parties, the Trust Company and depositor (s) waive trial by jury.”
There was also a further provision that on the second document, to wit: “In consideration of the opening and maintenance of this account * * * the Depositor agrees to be bound by, and that this account shall be maintained pursuant to, all the regulations, provisions, conditions and limitations contained in any * * * statement of account * * * used by or for the Depositor ”.
On the reverse side of every monthly statement of account sent to the plaintiff by the defendant thereafter, under the title “Depositor’s Contract ”, was the following statement: “In consideration of the continued maintenance of this account, depositor agrees that: Depositor waives a trial by jury * * * in any litigation in which the Company and depositor shall be adverse parties.”
This present lawsuit arose, when the defendant bank paid $750 out of the plaintiff’s account for a check which the plaintiff claims was not made or presented by him. Plaintiff asserts,
(1) that the defendant bank was negligent in paying the $750 out of his account for a check which was not drawn by him, and,
(2) that the defendant defamed his credit as a result of the wrongful payment of the check. Plaintiff seeks damages, for $750 by way of reimbursement to his account for money wrongfully withdrawn and $5,000 for defamation of his credit.
The plaintiff has claimed the right to a jury trial of these issues. The defendant moves this court to transfer the action from the jury to the nonjury calendar, arguing that plaintiff waived his right to a jury trial when he signed the aforementioned documents. This decision is limited to the defendant’s motion.
The Constitution of the State of New York expressly provides, in section 2 of article I that the right to a jury trial in a civil case may be waived by the parties “ in the manner to be prescribed by law.” Since the State Legislature has not enacted *1082 any statutes to govern this type of case, the courts have established the applicable rules, by decision.
Public policy does not inhibit freely contracting parties from expressly agreeing, in advance of any contemplated litigation, to waive their rights to a civil jury in disputes that might arise out of their contracts. (Waterside Holding Corp. v. Lask, 233 App. Div. 456.) The New York version of the Uniform Commercial Code, although making no effort to cover the present case, provides substantial support for this position in subdivision (1) of section 4-103. “ The effect of the provisions of this Article [art. 4, Bank Deposits Collections] may be varied by agreement
Prom.time immemorial in New York the courts have recognized that the right to a trial by a civil jury is an important privilege and have been loath to declare it waived unless the parties do so by clear agreement. Often they have stated that there can be no waiver unless each of the parties has formed a subjective intention to that effect, and have made that intention the subject of agreement with each other. “ The right of trial by jury is an important right; that while it may be waived by agreement .covering future litigation between the parties, the extent of the waiver is one of intention, expressed intention to be sure, but intention nevertheless to be determined in light óf all the circumstances.” (Klipack v. Raymar Novelties, 273 App. Div. 54, 57.)
In Gardner & North Roofing & Siding Corp. v. Champagne (48 Misc 2d 716, 717), the court sought, but did not find, “ an intentional abandonment of a known right or advantage to trial by jury. ” Even where valid jury waiver clauses have been found in contracts between freely consenting parties, the courts have not hesitated to construe them strictly against the party who had drawn and proffered the contracts when the issue involved the scope and reach of the waiver clause. (See, e.g., Levy v. New York Majestic Corp., 3 A D 2d 477.)
Judicial reluctance to find an effective waiver of the right to a civil jury from a casual act or inadvertence is easily understood. While much has been written and spoken both for and against the institution of the jury, the fact remains that throughout our legal history the jury, in both civil and criminal cases, has been considered as the ‘ ‘ conscience of the community,9 9 a “ protector and dispenser of justice,” a bulwark against possible abuses by the judiciary or even the Legislature. If a party to an action at law desires that his case be tried by a jury, such desire is not tú be easily frustrated, since popular respect for and reli *1083 anee upon our legal system are thus likely to be undermined, to the detriment of orderly and stable government.
The undisputed facts of the present case do not permit this court to find that plaintiff knowingly waived his right to a jury trial. As to the two signature cards which he executed in 1958 and 1960, respectively, there is nothing to show that plaintiff was at all aware of the terms of the ‘ ‘ contract ’ ’ which he signed or that he intended to sign a “ contract ” at all. Neither document called attention to the fact that its purpose was to create duties and obligations between the parties, enforcible in a court of law. Defendant’s representatives did not call plaintiff’s attention to the nature of the paper or to the effect it would later claim thereby. It manifested no intent to be bound by the same provisions and thereby failed to give the slightest indication that the bank considered his signature an element in the formation of a contract of any kind. For all that plaintiff depositor knew he was executing a form generally required by banks to be signed by a depositor, that is, a “ signature card,” so that the bank would have on file a specimen of his signature for use in handling his account. Therefore, it is unreasonable to assume that the ordinary person, when opening a bank account, or thereafter at the request of the bank, would know or should know that he was signing-a contract instead of a “ signature card— ” so called. Finally, the jury waiver provisions were printed in such fine type that the depositor would be unable to decipher the words without considerable effort. The type used is known by printers as “ 6-point regular light free Roman type ” or equivalent. ‘ ‘ If the terms of a document are not fairly legible, the acceptance of it does not involve assent to its terms unless they are actually known * * # [and] the principle applies also where the terms are printed in too fine type ”. (Capitol Automatic Music Co. v. Jones, 114 N. Y. S. 2d 185,189.)
Section 2-302 of the Uniform Commercial Code empowers courts to police contracts and to refrain from enforcing them, in whole or in part, if found to be unconscionable, as a matter of law. Section 2-302 provides:
‘ ‘ Unconscionable Contract or Clause.
“ (1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.
*1084 “ (2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.”
In the case of Williams v. Walker-Thomas Furniture Co., (350 F. 2d 445) Judge J. Shelly Weight signified that the thrust of the Uniform Commercial Code, vis-a-vis “ unconscionability,” was the same as the common law. The case was remanded by the United States Court of Appeals to the Federal District Court for a finding on the possible unconscionability of the contracts, saying, inter alia: “ While no decision of this court so holding has been found, the notion that an unconscionable bargain should not be given full enforcement is by no means novel.”
The court cited Scott v. United States (12 Wall. [79 U. S.J 443, 445): “ If a contract be unreasonable and unconscionable, but not void for fraud, a court of law will give to the party who sues for its breach damages, not according to its letter, but only such as he is equitably entitled to. ’ ’
The court then continued (p. 449): “ Accordingly, we hold that where the element of unconscionability is present at the time a contract is made, the contract should not be enforced. ’ ’
The following rules and standards were then set forth, which are cited and quoted at length in numerous other cases (p. 449): ‘ ‘ Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. * * * In many cases the meaningfulness of the choice is negated by a gross inequality of bargaining power. The manner in which the contract was entered is also relevant to this consideration. Did each party to the contract, considering his obvious education or lack of, have a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print and minimized by deceptive sales practices? Ordinarily, one who signs an agreement without full knowledge of its terms might be held to assume the risk that he has entered a one-sided bargain. ’ ’
Can it be said that plaintiff ever read the fine print in the documents involved or had any intention to abandon his constitutional right to a jury trial? Can the defendant validly claim that the plaintiff knowingly intended to waive an important right when he was given a “ signature card ” upon opening his bank account?
To grant defendant’s motion in this case would encourage banks and other contracting parties with superior bargaining *1085 power to impose oppressive, unfair terms upon weaker and less knowledgeable or careful parties through the use of nondisclosure methods or barely readable fine print. Particularly, is this to be frowned upon when the draftsman is a member of the banking industry, possessed of vast and concentrated power, and whose services are indispensable to virtually every citizen in our modern society. In the case of Frankini v. Bank of America Nat. Trust & Sav. Assn. (31 Cal. App. 2d 666, 678-679) the court observed: ‘ ‘ the power of the courts to carefully scrutinize transactions of this character is derived through the right of the State to exercise police power over banking institutions, and from the inherent nature of the business conducted ... ‘ In the progress made in the industrial and economic world within comparatively recent years, the business of banking has ceased to be, if indeed it ever was, a purely private enterprise. Such business affects so intimately the commercial welfare and business interests of the people as to render it a proper subject of regulation by the State ’ * * *
“ The business of the banker is not juris privati only, but, like that of an innkeeper or common carrier, is affected with a public interest, and therefore subject to public regulation.”
The California court then proceeded to invalidate a contract which the bank involved alleged it had made with a depositor. Of course, a bank can lawfully and appropriately obtain from a depositor the latter’s agreement to waive the right to a jury trial in any future litigation between the parties. We hold that a bank does not have the power to impose on an unknowing and unsuspecting depositor a waiver of his important right to a civil jury without actually informing him, or making it possible for him to inform himself, of the legal effect of a document which it asks him to sign and leave with the bank, especially where the depositor is not aware that the document is to have the effect of denying him an important legal right. “ It is a general rule, since the right of trial by jury is highly favored, that waivers of the right are always strictly construed and are not to be lightly inferred or extended by implication, whether with respect to a civil or criminal case. * * * Indeed, every reasonable presumption should be made against its waiver.” (31 Am. Jur., § 44, p. 48.)
The above rule has been recognized as applicable to independent contractual waivers. (73 ALR 2d § 3, p. 1337.) “ As the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver.” (Ætna Ins. Co. v. Kennedy, 301 U. S. 389, 393.)
*1086 The American Law Reports (vol. 73 2d, p. 1338, §4) state: “ It has been held that courts will look primarily to the cause of action stated in order to determine whether it falls within a jury waiver clause. Lera Realty Co. v. Rich (1948) 273 App. Div. 913, 77 N Y S 2d 658; Edsaid Corp. v. Samuels (1949, City Ct. of Mt. Vernon) 92 N Y S 2d 897; Scherman v. 1501 Broadway Corp. (1953 Sup.) 127 N Y S 2d 600 ; Battiato v. Argentieri (1958) 10 Misc 2d 624, 172 N Y S 2d 998.”
Any ambiguity in a jury waiver clause must be resolved against the draftsman. (Gach v. Kanelit Realty Co., 106 N. Y. S. 2d 871.) It is also an established principle of law that a provision in an agreement for a waiver of a jury trial is applicable to a cause of action only if it relates thereto. (50 C.J.S., Juries, § 107; Rappaport v. Elmorton Holding Corp., 167 Misc. 82; Kress v. Schulman, 181 Misc. 997; Klausner v. Rosenworcel, 116 N. Y. S. 2d 32; Klipack v. Raymar Novelties, 273 App. Div. 54; Schaefer v. Ohland, 105 N. Y. S. 2d 935.)
In the light of the foregoing principles, it is important to refer to the agreement constituting the waiver. The signature card merely states that the jury waiver applies ‘ ‘ in any litigation ” which the depositor and the bank may be involved. In the application of the rule of strict construction, the provision must be resolved against the defendant bank and is therefore taken to mean those lawsuits which are inherently involved in the services rendered by the defendant bank. Actions sounding in tort, such as negligence or defamation are not within the purview of the waiver clause. Most assuredly, the language used does not contain any expression or inference of a waiver of the light to a jury trial on the part of the plaintiff in such type of lawsuits. To hold otherwise could possibly enable a defendant bank to invoke the jury waiver clause and impose a non jury trial on a depositor, were a bank officer to assault the depositor; or where the customer having entered the bank premises slipped and fell to the floor due to the negligent maintenance of the premises; or where a bank guard carelessly removed his pistol from the holster, discharged the weapon and injured the depositor; or where, as here, it is alleged the defendant defamed the credit of the plaintiff.
This court holds that the jury waiver clauses aforementioned are inoperative in this case, having been presented for plaintiff’s signature under the guise of being signature cards and in a maze of fine print, and because they were unconscionable on the whole. The court considers it sound public policy to uphold the constitutional guarantee of trial by jury, unless knowingly waived by contract or other legal means.
*1087 The court finds, as a matter of law, that the attempt by the bank to impose a jury waiver condition on its depositor by printing such waiver in fine type on the reverse side of its monthly statements, was unconscionable and did not constitute a contract between the parties. The monthly statement ought not to be given authority for more than what it purported to be, i.e., a statement of the condition of the depositor’s account.